COMMISSIONER OF PUBLIC HEALTH *vs.* BOARD OF HEALTH OF TEWKSBURY & others.

Middlesex.    March 10, 1966. — April 4, 1966.

Present: WILKINS, C.J., SPALDING, CUTTER, SPIEGEL, & REARDON, JJ.

*Dump. Public Health. Administrative Matter. Equity Jurisdiction,* Health order.

Under G. L. c. 111, § 150A, the State Department of Public Health, after due notice and a public hearing and a determination that operation of a certain town dump "results in a nuisance and a danger to public health," had jurisdiction to make administrative decisions ordering the dump to be operated "strictly in accordance with the Sanitary Landfilled method," and, upon the town's refusal to operate the dump by that method, ordering the dump closed. [508–509]

The Superior Court had jurisdiction under G. L. c. 111, § 150A, to enforce an order of the State Department of Public Health within its authority under that section, but not to review the basis for the order. [509]

BILL IN EQUITY filed in the Superior Court on September 4, 1963.

The suit was heard by *Vallely,* J.

*Warren W. Allgrove,* Town Counsel, for the defendants.

*Charles W. Long,* Legal Assistant to the Attorney General (*David Lee Turner,* Assistant Attorney General, with him), for the plaintiff.

SPIEGEL, J. This is a bill in equity brought by the Commissioner of Public Health of the Commonwealth (Commissioner) against the members of the board of health of the town of Tewksbury (board), the members of the board of selectmen of the town of Tewksbury (selectmen), and one

Anthony Rocco, owner of a tract of land on which the Tewksbury town dump is located. The Commissioner seeks an injunction to restrain the defendants from "dumping or disposing of refuse" in the town dump in violation of an order of the Department of Public Health of the Commonwealth (department), and seeks to have Rocco "ordered to cover . . . [the] dumping area with at least two feet of clean earth." The board and the selectmen appealed from a final decree which stated in pertinent part that "the Town of Tewksbury and the defendants are to operate the dump in accordance with the sanitary land fill method within thirty days of its [*sic*] next regularly scheduled town meeting. In the event the dump is not so operated, or thereafter shall cease to be so operated, the order of the Department of Public Health closing the dump shall forthwith become operative and thereupon the defendants and the said Town shall be and hereby are restrained and enjoined from using the . . . dump and from allowing or causing it to be operated." The trial judge made "Findings of Facts Rulings and Order for Decree" and the evidence is reported.

The judge found that "[c]omplaints concerning the operation and effect of the dump on some people in the area of the dump were made to the State Department of Public Health. . . . [E]xamination by the sanitary engineer from the Department of Public Health disclosed rodent infestation (rats) flies and smoke." After a public hearing, the department found "That the operation of the dump results in a nuisance and a danger to public health" and "required that the dump be operated strictly in accordance with Sanitary Landfilled method." The town refused to operate the dump in the required manner, and the department ordered the dump closed.

The Commissioner contends that "the only issue before the Superior Court . . . was whether the administrative decision concerning the dump was within the agency's jurisdiction." We agree.

General Laws c. 111, § 150A, inserted by St. 1955, c. 310, § 1, provides in part that "The assignment of any place as

a dumping ground . . . may be modified through the imposition or amendment of conditions, at any time after due notice and public hearing, . . . by the department upon determination that the dumping ground . . . results in a nuisance and a danger to the public health.'' The department fulfilled all these requirements and, therefore, the decision was within its authority.

General Laws c. 111, § 150A, also provides that ''The superior court shall have jurisdiction in equity to enforce the provisions of this section upon petition of the department or any person aggrieved.'' As we stated in *Sisters of the Holy Cross of Mass.* v. *Brookline,* 347 Mass. 486, 491, '' 'The ordinary meaning of ''enforce'' is ''to compel obedience to,'' ''to cause to be executed.'' ' . . . [A] grant of specific equity jurisdiction . . . must be strictly construed.'' Jurisdiction in equity to enforce the provisions of § 150A does not expand the jurisdiction of the courts under this section to review the basis for the administrative decision.

''The record suggests no reason why the . . . [defendants] should not either have complied promptly with . . . [the department's] decision or have sought review under G. L. c. 30A.'' *Department of Pub. Welfare* v. *Billerica, ante,* 56, 57. The decree enforcing the decision of the department was proper.

*Decree affirmed.*