361 Mass. 589 (1972)
281 N.E.2d 585
DIRECTOR OF THE DIVISION OF WATER POLLUTION CONTROL
vs.
TOWN OF UXBRIDGE.
Supreme Judicial Court of Massachusetts, Suffolk.
February 9, 1972.
April 12, 1972.
Present: CUTTER, SPIEGEL, REARDON, QUIRICO, & BRAUCHER, JJ.
Philip J. Murphy for the defendant.
David B. Gittelsohn, Assistant Attorney General, for the plaintiff.
*590 BRAUCHER, J.
The defendant town appeals from a final decree pursuant to the Massachusetts Clean Waters Act, G.L.c. 21, §§ 26-50, inserted by St. 1966, c. 685, § 1, as amended through St. 1967, c. 873, enforcing an order of the Division of Water Pollution Control (the division) that the town construct a sewage treatment system in order to abate the pollution of a waterway.
The Massachusetts Clean Waters Act was enacted in response to the Federal Water Pollution Control Act, 33 U.S.C. §§ 1151 et seq. (1970), inserted by 62 Stat. 1155, as amended by the Water Quality Act of 1965, 79 Stat. 903. See the Clean Water Restoration Act of 1966, 80 Stat. 1246, and the Water Quality Improvement Act of 1970, 84 Stat. 91. See also Hines, Controlling Industrial Water Pollution: Color the Problem Green, 9 B.C. Ind. & Commercial L. Rev. 553, 569-584, 594-596; Manaster, The Development of Federal Water Pollution Control: The Present and the Future, 1971 U. of Ill. L. Forum, 36, 38-39. Under the Federal statute, Federal grants are authorized for the construction of municipal treatment works for sewage, if the project has been approved by a State water pollution control agency and is included in a comprehensive program. If the State agrees to pay twenty-five per cent of the costs and if enforceable water quality standards have been established for waters into which the project discharges, the Federal grant may amount to as much as fifty per cent of the estimated reasonable costs of the project. 33 U.S.C. § 1158 (b).
The Massachusetts statute vests in the division the power to prepare and keep current a comprehensive plan for the abatement of water pollution, to adopt water quality standards, and to administer and enforce the laws relative to water pollution control. G.L.c. 21, § 27. The division was also authorized to approve applications for Federal grants either by water pollution abatement districts created for the purpose or by existing governmental units, and to make available matching grants by the Commonwealth. G.L.c. 21, §§ 30A, 33; *591 St. 1966, c. 687, § 1, as amended by St. 1967, c. 873, § 13. The statute contemplates the cooperation of Federal, State and local agencies to a common end.
The present proceeding was brought pursuant to G.L.c. 21, § 49 (repealed and replaced by G.L.c. 21, §§ 44-46, St. 1970, c. 704, §§ 4, 5): "The division may require by order a ... town ... maintaining a sewerage system ... to provide and operate such treatment facilities as are in its opinion necessary to insure adequate treatment prior to discharge to any watercourse. The supreme judicial court or the superior court shall have the jurisdiction in equity to enforce any such order." The trial judge made findings, rulings and an order for decree, and the evidence is reported.
We summarize the findings. The town maintains a sewerage system which discharges raw sewage into the Mumford River thereby reducing the quality of the water below the standards adopted by the division. On July 19, 1968, the division issued an order establishing a schedule for planning and constructing a sewage treatment system. On July 22, 1968, at a meeting of a majority of the board of selectmen, upon motion duly made and seconded, they assented to an signed the order, expressly waiving the public hearing contemplated by G.L.c. 21, §§ 45, 46. The town did not seek judicial review under G.L.c. 30A, as required by G.L.c. 21, § 47. On the basis of his findings, the judge ordered a decree enforcing the order of the division. The decree as entered established a new schedule calling for the completion of construction nearly four years after the date set in the consent order.
1. The town contends that its board of selectmen had no authority to assent to the order of the division or to waive the public hearing contemplated by G.L.c. 21, §§ 45, 46.
The statute provided for "written notice to the alleged violator," who may "appear in person or by his attorney before the director or his duly authorized agent." In the present case the "alleged violator" was the town, *592 and the statute does not specify who is to receive notice on behalf of the town. In this situation we think notice is sufficiently given if it is served in the manner provided for the service of process. See G.L.c. 223, §§ 28, 36, 37. Under G.L.c. 223, § 37, service in an action against a town is to be made upon "the treasurer thereof, or if no treasurer is found, upon ... the town clerk or one of the selectmen," or, if there are no such officers, "upon one of the inhabitants of the ... town." Consent of the selectmen by vote at a meeting was the equivalent of such service. Compare Harris v. Newbury, 128 Mass. 321, 325 (notice to one selectman); Taylor v. Woburn, 130 Mass. 494, 496 (notice to one selectman); Wormwood v. Waltham, 144 Mass. 184, 185-186 (notice to city clerk through board of aldermen); Garvey v. Revere, 187 Mass. 545, 546 (filing with selectmen when not in session); Bauer v. Mitchell, 247 Mass. 522, 526 (service on county commissioners); O'Connell v. Cambridge, 258 Mass. 203, 204-205 (notice to city solicitor fails where contrary to statutory provision); Commonwealth v. Hudson, 315 Mass. 335, 338 (filing of brief by town counsel); O'Shea v. Holyoke, 345 Mass. 175, 178-179 (presentation to the board of aldermen through city clerk); Hirshfeld v. District of Columbia, 254 F.2d 774, 775-776 (D.C. Cir.) (notice improperly addressed to city engineering department but still good as actually received by proper city office). The town was therefore properly notified of its right to claim a fair hearing and waived that right. G.L.c. 30A, § 10. Brockton Hosp Co. v. Commissioner of Pub. Welfare, 346 Mass. 742, 744.
2. All orders of the division were subject to judicial review as provided in G.L.c. 30A. G.L.c. 21, § 47 (repealed and replaced by G.L.c. 21, § 46, St. 1970, c. 704, §§ 4, 5). A petition for review must be filed within thirty days after receipt of notice of the final decision of the division. G.L.c. 30A, § 14 (1). Since the town did not seek review within the time allowed, the only issue before the Superior Court was whether the *593 administrative decision was within the agency's jurisdiction. Department of Pub. Welfare v. Billerica, 350 Mass. 56, 57. Commissioner of Pub. Health v. Board of Health of Tewksbury, 350 Mass. 507, 508. The judge was not authorized to hold an evidentiary hearing or to make findings with respect to the fact of pollution.[1] See Duato v. Commissioner of Pub. Welfare, 359 Mass. 635, 639.
3. There was no showing that the town had authorized anyone to exercise the powers of a board of sewer commissioners under G.L.c. 83, § 1, as appearing in St. 1964, c. 736, § 2. The town introduced evidence that the board of selectmen had never been so authorized, and now argues that the board of selectmen therefore had no authority to waive a hearing, that "only the town itself could conceivably be authorized to assent to the order through a town meeting and this was not done." This contention resembles that rejected in Commonwealth v. Hudson, 315 Mass. 335, 343-349, and is equally without merit.
4. The town claims that G.L.c. 21, § 49, was invalid as repugnant to the so called home rule amendment, art. 2 of the Amendments to the Constitution of the Commonwealth, as supplanted in 1966 by art. 89. Section 8 of the amendment authorizes the enactment of "general laws which apply alike to all cities, or to all towns, or to all cities and towns, or to a class of not fewer than two." In our opinion the Clean Waters Act is such a *594 general law. See Opinion of the Justices, 356 Mass. 761, 766-768; Opinions of the Justices, 356 Mass. 775, 787-788; Opinion of the Justices, 357 Mass. 831, 834-835.
Decree affirmed.
NOTES
[1] Nevertheless, we think it appropriate to say that in our opinion the evidence before the judge warranted his finding that the town's discharge of raw sewage into the Mumford River reduced the quality of the water below the standards adopted by the division. The division's expert testified that the division had classified the river as Class B, "suitable for bathing and recreational purposes including water contact sports, accessible for public water supply with appropriate treatment, suitable for agricultural and certain industrial cooling, excellent fish and wildlife habitat, and excellent esthetic value." He also testified that there were twelve individual criteria or limits, that it was a violation to exceed any one limit, and that the town "definitely" was still polluting the river at the time he testified, nearly three years after certain tests about which he had testified in detail.