769 P.2d 99

**Patrick H. NUNEZ, Claimant–Appellant,**

v.

**SMITH'S MANAGEMENT CORPORA-TION, self-insured, Respondent–Appellee.**

**No. 10512.**

Court of Appeals of New Mexico.

Dec. 6, 1988.

Dennis F. Armijo, Farmington, for claimant-appellant.

Robert A. Martin, Bradley & McCulloch, P.A., Albuquerque, for respondent-appellee.

## OPINION

HARTZ, Judge.

Claimant, Patrick H. Nunez, appeals a Workers' Compensation Division (WCD) order denying him benefits. At the WCD hearing Nunez claimed that while working for respondent, Smith's Management Corporation (Smith's), in February 1985, he fell off a stack of pallets and struck his right shoulder on a knife sharpener, causing pain from his right shoulder to his hand. The hearing officer found that Nunez had not satisfied his burden of proving that his physical ailments were caused by a work-related accident or that he gave the statutorily required timely notice of his accident and injury. Either finding would sustain the denial of benefits.

Nunez objects to the findings, contending: (1) the hearing officer improperly adopted verbatim all the findings of fact and conclusions of law proposed by Smith's; (2) two findings on causation are contradictory; (3) the uncontradicted medical evidence rule requires a finding of causation; and (4) his own uncontradicted testimony requires a finding of proper notice. We affirm the WCD's order denying benefits.

■ We apply the whole record standard of review. *Tallman v. ABF*, 108 N.M. 124, 767 P.2d 363 (Ct.App.1988). "Viewing the live witness testimony as the fact finder did and considering all other evidence, favorable and unfavorable, and disregarding that which is discredited, we then decide if there is substantial evidence in the whole record to support the agency's finding or decision." *Id.* at 128, 767 P.2d at 367. "[T]he reviewing court views the evidence in the light most favorable to the agency decision." *Id.* at 128, 767 P.2d at 367.

## VERBATIM ADOPTION OF PROPOSED FINDINGS

■ Nunez complains that the hearing officer adopted verbatim Smith's proposed findings and conclusions. A number of New Mexico appellate decisions criticize such verbatim adoption. *See, e.g., Fitch v. Sam Tanksley Trucking Co.,* 95 N.M. 477, 623 P.2d 991 (Ct.App.1980). These decisions relate to district courts and rely on the Rules of Civil Procedure, but the policy reasons against the practice apply equally to administrative agencies. Composing findings and conclusions in one's own words requires more deliberate consideration of the facts and issues, providing additional assurance that the hearing officer has exercised independent judgment. Indiscriminate reliance by the hearing officer on language proposed by the prevailing party reduces confidence in the administrative process, leaving a question in the mind of the losing party as to how much attention the hearing officer paid to the case. We caution the WCD to avoid wholesale verbatim adoption of a party's proposed findings and conclusions, as occurred in this case.

■ Nevertheless, there is no evidence, other than the adoption of the verbatim findings and conclusions themselves, of an "abdication of judicial responsibility" by the hearing officer. He made four findings not proposed by Smith's. In these circumstances, "[e]ven the adoption of verbatim findings is not in error if they are supported by the record." *In re Hamilton,* 97 N.M. 111, 114, 637 P.2d 542, 545 (1981). Because, as discussed below, we find substantial support in the record for the findings specifically challenged by claimant, we do not remand for new findings. *See Jesko v. Stauffer Chemical Co.,* 89 N.M. 786, 558 P.2d 55 (Ct.App.1976).

## APPARENT CONTRADICTORY FINDINGS

■ Nunez contends that the hearing officer's Findings Nos. 9 and 10 are inconsistent. Finding No. 9 states that none of Nunez' eleven treating physicians, including Dr. Darrell Seelig, "connected Claim-ant's complaints as a matter of reasonable medical probability to his employment with Smith's." Finding No. 10 states that Dr. Seelig's "testimony as to causal connection is not sufficient as to its factual foundation nor as· to his expertise. Dr. Seelig's testimony is based on speculation." The two findings are inconsistent if one reads Finding No. 9 to say that Dr. Seelig did not testify on causation. But the finding does not say that. It says only that Dr. Seelig failed to establish causation as a "reasonable medical probability"; Finding No. 10 explains how the testimony failed in that respect.

■ In any event, Nunez does not indicate how he could benefit by a remand to the hearing officer with respect to any inconsistencies between Findings Nos. 9 and 10. Neither finding supports Nunez; and no point would be served by reminding the hearing officer that Dr. Seelig testified on causation, since Finding No. 10 acknowledges as much. *See Wright v. Brem,* 81 N.M. 410, 467 P.2d 736 (Ct.App.1970) (function of the court of appeals is to correct an erroneous result and not to correct errors that, even if corrected, would not change the result below).

## FAILURE TO PROVE CAUSATION

The real issue is whether Dr. Seelig's testimony compels a finding that Nunez' complaints were caused by an employment-related accident.

Nunez relies on the uncontradicted medical evidence rule. In general, expert opinion evidence is not conclusive, even when uncontradicted. But in workers' compensation cases "where causal connection has been denied and must be established by medical testimony as a medical probability, and where medical opinion based on the facts has been expressed and is uncontradicted, the evidence is conclusive upon the court as trier of the facts." *Ross v. Sayers Well Servicing Co.,* 76 N.M. 321, 326, 414 P.2d 679, 683 (1966).

■ Dr. Seelig testified as follows:
Q Now, Doctor, given the history that was given to you by Mr. Nunez and all of

the other information that was provided to you by other treating physicians, do you have a medical opinion as to what caused Mr. Nunez's [sic] pain in his shoulder?

\* \* \* . \* \* \*

A I feel that he could have injured himself in such a fall, you know, landing on his shoulder, and as I say, I hadn't seen him other than just the history, but it's conceivable that he could have pain as a result of a fall like that.

Q Unfortunately "could have" is not good enough for the legal profession, what I need to know is to a medical probability. It's a medical probability, it's not to a definite yes, you know what I'm saying? Do you have an opinion as to a medical probability?

\* \* \* \* \* \*

A I feel that it probably was from an injury such as a fall that he had there.

Q Specifically the injury from the fall at Smith's that Mr. Nunez indicated to you?

A Yes.

The uncontradicted medical evidence rule does not apply to such ambiguous testimony. *See Hernandez v. Mead Foods, Inc.,* 104 N.M. 67, 716 P.2d 645 (Ct.App.1986). But even if Dr. Seelig's testimony were categorical, the hearing officer could reject it for two reasons.

■ First, other medical opinion in the record contradicts, or at least reasonably could lead the fact finder to doubt, the contention that the ailments Nunez described were caused by an accident in February 1985. *See id.*

Nunez' brief-in-chief describes the injury as follows: "Pat hurt his right shoulder in the accident \* \* \*. The pain is on Pat's right shoulder towards the back and runs down the elbow to his little finger." A similar description of Nunez' condition appears in a report by Dr. F. Tod Welch dated February 1, 1985: "[I]ntermittent pain in the right arm, extending down the back to the small finger. He has had some intermittent numbness and tingling in that arm." But rather than attributing the con-

dition to a recent accident, Dr. Welch stated that Nunez "has had intermittent pain in the right shoulder and back for three years"; and his impression was, "The patient has a chronic right shoulder strain."

In addition, on February 20, 1985, Dr. Robert L. Grossheim wrote Dr. Welch concerning his examination of Nunez, "I have been unable to put my finger on a specific cause for his problem, other than he might have a fibromyositis \* \* \*"; and in a September 30, 1985, report, Dr. Wolff M. Kirsch gave his impression of Nunez' condition as "migratory arthritis."

These descriptions of Nunez' complaints as a chronic condition, of undetermined or arthritic origin, reasonably could cause the hearing officer to reject a contrary medical opinion that the condition was caused by an accident shortly before or after Drs. Welch and Grossheim saw Nunez.

■ Second, the uncontradicted medical evidence rule requires the fact finder to accept only the *opinion* of the medical expert. The fact finder is not bound to accept the version of facts upon which the expert's conclusion is based. If he does not accept that version, he need not adopt the conclusion, because "an expert's opinion is only as good as the factual basis for it." *Grudzina v. New Mexico Youth Diagnostic & Dev. Center,* 104 N.M. 576, 582, 725 P.2d 255, 261 (Ct.App.1986). The hearing officer found that Dr. Seelig's "testimony as to causal connection is not sufficient as to its factual foundation \* \* \*." His finding can stand if he was entitled to reject the evidence concerning the accident upon which Dr. Seelig based his testimony.

The evidence supporting Nunez' version of the accident came solely from Nunez himself. There was ample evidence, particularly concerning the date of the accident, from which the hearing officer could have decided that Nunez' version was not credible. Nunez' alleged February 1985 date for the accident was significant, because Smith's raised a statute of limitations defense and one of Nunez' arguments against that defense was that the filing of his claim in February 1987 was timely for a February 1985 accident. *See* NMSA 1978, §§ 52–

1–30 & –31 (Orig.Pamp.); *ABF Freight Sys. v. Montano*, 99 N.M. 259, 657 P.2d 115 (1982) (in certain circumstances worker has two years and thirty-one days to file his claim).

Contrary to Nunez' testimony of the February 1985 date, his original claim for benefits, which he signed, gave the date of the accident as August 1979. When asked about this discrepancy by Smith's attorney at the hearing, Nunez said, "Well, that's because it has been—like, you know, they say the statute of limitations—been so long, it's been a long time I can't remember exactly when it was." The hearing officer may have decided that Nunez' version of the date was guided more by statute of limitations considerations than by his memory.

Records and testimony of Nunez' physicians also impeach Nunez' February 1985 date for the accident. A record of Dr. Robert Sherill, Jr., dated July 24, 1986, states that Nunez first told him he was injured in August 1979, but then corrected the date to August 1982. A January 12, 1987, record of Dr. Mohinder A. Mital reports that Nunez said he had injured his right shoulder at work about three years earlier. Dr. Seelig testified that in November 1986, Nunez told him that his accident at Smith's occurred three or four years earlier.

Also, Nunez testified that about a month after his accident he went to see Dr. Welch. But, as already noted, Dr. Welch's record of Nunez' February 1, 1985, visit for right shoulder and back pain says nothing about an accident; on the contrary, the doctor stated that the patient had "chronic right shoulder strain." A note in Dr. Welch's record dated February 4, 1985, gives Nunez' history as "long standing problem—same intensity & distrib. [distribution] for over 2–3 years—insidious onset; * * * previous hx [history] unremarkable." On follow-up visits on February 19 and 25, 1985, Dr. Welch again referred to the problem as "a chronic right shoulder strain." Dr. Welch did not see Nunez again until September 4, 1985.

Corroborating Dr. Welch's records, Dr. Grossheim wrote Dr. Welch on February 20, 1985, "I have been unable to put my finger on a specific cause for his problem, other than he might have a fibromyositis * * * ." He reported that Nunez told him that pills provided by Dr. Welch had given him relief for the first time in over a year.

The hearing officer also could consider medical records showing that Nunez was treated prior to February 1985 for what appear to be ailments similar to those for which he was treated in 1985, 1986, and 1987.

On this record, the hearing officer could conclude that Nunez did not tell the truth about his accident and therefore could reject the opinion of Dr. Seelig predicated upon Nunez' version of events.

NOTICE

NMSA 1978, Section 52–1–29 (Orig. Pamp.) requires a worker to give his employer timely notice of an injury. Otherwise his right of recovery under the Workers' Compensation Act is barred. § 52–1–31. As stated in *Clark v. Duval Corp.*, 82 N.M. 720, 722, 487 P.2d 148, 150 (Ct.App.1971):

The purpose of the notice requirement " * * * is to enable the employer to investigate the facts while they are accessible and, if necessary, to employ doctors so as to speed recovery * * *." *Waymire v. Signal Oil Field Service, Inc.*, 77 N.M. 297, 422 P.2d 34 (1966). Another purpose of the notice requirement is to allow the employer to protect himself against simulated or aggravated claims. *Lozano v. Archer*, 71 N.M. 175, 376 P.2d 963 (1962).

■ Once notice is put in issue, the worker must prove compliance with the statutory requirement. *Aguilar v. Penasco Indep. School Dist. No. 6*, 100 N.M. 625, 628, 674 P.2d 515, 518 (1984). "Absent the requisite proof a judgment in favor of a workman cannot stand." *Geeslin v. Goodno, Inc.*, 75 N.M. 174, 178, 402 P.2d 156, 160 (1965). Contrary dictum in *Mosher v. Bituminous Ins. Co.*, 96 N.M. 674, 676, 634

P.2d 696, 698 (Ct.App.1981), misstates the law.

The hearing officer found that Nunez had not sustained his burden of proof as to notice. Nunez contends that his testimony that he informed his supervisor about the accident "like the next day" is uncontradicted factual evidence that cannot be disregarded. He relies on *Ortiz v. Ortiz & Torres Dri–Wall Co.*, 83 N.M. 452, 493 P.2d 418 (Ct.App.1972), which relies on *Medler v. Henry*, 44 N.M. 275, 101 P.2d 398 (1940).

██ But *Medler* states that the fact finder can disregard uncontradicted testimony in several circumstances, such as when the witness is impeached. *Id.* at 283–284, 101 P.2d at 403. The evidence contradicting Nunez' testimony about the circumstances of the accident constitutes sufficient impeachment that the hearing officer could refuse to credit his testimony on other matters as well. *See Territory v. Muniz*, 17 N.M. 131, 136, 124 P. 340, 341–342 (1912); SCRA 1986, 13–2004; 3A J. Wigmore, *Evidence* §§ 1008 to 1015 (Chadbourn rev.1970).

Although the hearing officer could have believed Nunez on the notice issue, he need not adopt the bare-bones testimony of a self-interested party whose recollection on a central issue has been impeached. *Cf. Alfieri v. Alfieri*, 105 N.M. 373, 733 P.2d 4 (Ct.App.1987) (self-interest of witness is a proper ground for hesitancy in crediting his testimony).

CONCLUSION

For the above reasons, we hold that the hearing officer properly could find that Nunez did not satisfy his burden of proving causation or notice. We therefore affirm the WCD's denial of benefits. It is unnecessary to consider the other arguments raised by Nunez.

IT IS SO ORDERED.

FRUMAN and APODACA, JJ., concur.