838 P.2d 995

Elizabeth Jannan HALL, k/n/a Elizabeth Jannan Powell, Petitioner–Appellee/Cross–Appellant,

v.

Rex A. HALL, Respondent–Appellant/Cross–Appellee.

Nos. 12953, 13138, 13310 and 13607.

Court of Appeals of New Mexico.

Aug. 26, 1992.

Certiorari Denied Oct. 1, 1992.

Mary W. Rosner, Eileen Paez, Albuquerque, for petitioner-appellee/cross-appellant.

Roy G. Hill, Deming, for respondent-appellant/cross-appellee.

## OPINION

PICKARD, Judge.

These are four consolidated cases, including four appeals and a cross-appeal, from a final decree of divorce and orders on subsequent efforts to enforce that decree. Except for the question of whether the trial court could award wife $1 per year in alimony, for what husband contends is only to preserve jurisdiction in the case, the issues arising from the final decree are substantial evidence issues that will be addressed summarily after we dispose of some preliminary matters, including whether the doctrine barring an appeal when an appellant accepts the benefits of a judgment applies to this case. We will state the facts, dispose of preliminary matters, address the question of substantial evidence, and then discuss the major issues raised by the cases. They involve (1) whether the award of $1 per year in alimony was proper; (2) whether the trial court could enforce the "property division" award via the exercise of contempt powers under the facts of this case; and (3) whether the trial court had jurisdiction during the pendency of the appeal to restructure the final decree once it became clear that husband was determined not to pay wife anything whatsoever.

We accept husband's contention that wife's accepting the benefits of the judgment does preclude us from considering her issues in this divorce case because wife has not seen fit to respond to the contention. We hold that substantial evidence supported the trial court's decision on the merits of the property division insofar as it is challenged by husband. We further hold that the trial court could properly award alimony of $1 per year, and that it could enforce the "property division" award through the use of its contempt powers because the property division was intended by the trial court to be the source of wife's support. However, we hold that the trial

court was without power to modify the final decree during the pendency of this appeal. Accordingly, the decree is affirmed and all further orders of civil contempt are affirmed. An order of criminal contempt and the order modifying the final decree are reversed.

## I. FACTS

Husband is an attorney who met wife in Texas during law school. They married in 1975, during his last year in law school. Husband moved into the house that wife owned and was supported in part by wife's income from her beauty salon. After husband's graduation, the parties moved to Deming, New Mexico, where husband's parents lived. Wife's house and business were sold, and the parties took the proceeds to begin their life in New Mexico. They used the proceeds for part of their living expenses during their first year in New Mexico, before husband passed the bar examination.

During the marriage, the parties acquired various properties and debts. In unchallenged findings, the trial court found that the community property was valuable but not liquid and that if the parties attempted to rapidly liquidate the properties to divide them, the parties' debt would exceed the properties' value. Accordingly, the trial court divided the property so that husband would be awarded the bulk of it and would pay wife $155,809 to equalize the division. The $155,809 would have been paid as follows: $17,287 on or before February 27, 1991, and $22,543 annually until 2001, starting February 27, 1992.

As part of its findings and conclusions, the trial court found that wife would not have income to support herself unless husband made timely payments on the property division. Accordingly, the decree provided that the parties would pay their own attorney fees as long as husband was timely in making the first three payments under the decree; that husband would be ordered to pay alimony of $1 per year as long as he was not more than fifteen days in arrears in his property division payments under the decree; that wife would have a lien against all of husband's property to secure payment of his indebtedness to her; and that

> [a]ny diversion of funds made by [husband] to make payments ordered to be made by [wife] without prior consent of the court after motion and hearing shall be regarded as contempt of court, and [husband] will not be allowed credit for any such payments made against the amounts owed [wife].

The findings, conclusions, and decree were filed in open court on February 1, 1991. Unknown to either wife or the trial court until much later, on February 4, 1991, husband filed deeds that he had executed on January 11, 1991, deeding his properties to a Texas corporation of which he was the agent. The Texas corporation has since deeded the properties to a London corporation. Both parties appealed the final decree, and neither obtained a stay.

When February 27 came and went without husband's paying the $17,287 then due or executing documents required by the final decree, the trial court ordered him to show cause on March 8 why he should not be held in contempt. On March 6, husband's attorney filed a motion to vacate the March 8 hearing. The court did not act on the motion to vacate, and husband did not attend the hearing. The trial court found husband in contempt for his failure to attend the hearing and ordered a bench warrant for his arrest. At a later hearing, which husband attended and at which he was given the opportunity to present evidence, the trial court refused to set aside the earlier order. At that hearing, the trial court physically held husband in the courthouse until he signed a promissory note to wife in the amount of $155,809 and mortgages on what was thought to be his property to secure this note. During the hearing, the trial court asked husband if he had encumbered any of the property. (In its February 1 decree, it had ordered husband not to encumber any of the property.) Husband answered that he had not encumbered the property. The record indicates, contrary to husband's statement to the trial court, that between February 1 and the

date of the hearing, husband recorded the deeds transferring the property to the Texas corporation.

At the conclusion of this hearing, husband was again found to be in contempt for failing to attend the earlier hearing. The trial court ordered husband to pay wife $1865 in attorney fees required to enforce prior orders and further ordered husband to pay wife the $17,287, that he was supposed to pay her in February, on or before March 25. The order provided that husband's failure to abide by the order would result in the assessment of a fine of $500 per day until he complied. Husband appealed this March 1991 order.

Wife, in the meantime, filed a motion to modify the final decree because husband was threatening to file bankruptcy to avoid paying the first installment on the final decree. Accordingly, wife requested that the trial court change the $1 per year alimony into a lump sum of $155,809 plus $1865. Wife also filed a motion for order to show cause why husband should not be held in contempt for failing to pay the $17,287 plus $1865 that was due on March 25, expressly seeking the threatened $500 per day in fines.

Following two additional hearings in May 1991, the first of which husband did not attend and the second of which he did attend, the trial court again found husband in criminal contempt for failing to attend the March 8 hearing, and in civil contempt for repeatedly violating other court orders, particularly to pay wife the first installment on the decree and other sums awarded to her as attorney fees. The trial court expressly found that court orders were not sufficient to enforce the judgments of the court. The trial court assessed the threatened civil contempt fine of $500 per day for a total of $28,000 in fines and $4246 in total attorney fees and costs to date. The trial court noted it had previously found that a piece of property awarded to husband as his separate property was worth $156,000, and it ordered husband to deed that property to wife "as her share of the community assets, in lieu of a ten (10) year payout." As part of this order, the trial court extinguished the promissory note for $155,809 it had earlier forced husband to sign. Husband appealed this order.

When it later appeared that husband had transferred this property to the Texas corporation, wife filed a motion to order husband to get the property back and transfer it to wife, and for further sanctions. In December 1991, the trial court found husband in contempt for failing to pay the $32,246 in fines and fees earlier ordered. It assessed further attorney fees of $740. It ordered husband to jail until the $32,986 was paid. Husband appealed this order.

As part of the December order, the trial court ordered husband to show cause why he should not be held in contempt for failure to transfer the land ordered to be transferred in lieu of the ten-year payout. Husband developed heart problems in jail and was hospitalized. A hearing on this order to show cause apparently has not been held. In connection with this court's action on husband's motion to stay the trial court's order to pay $32,986 or go to jail, the trial court recently held a hearing on the state of husband's health. The trial court found that husband was to avoid stress; that going to jail was stressful; that husband did other things that were stressful and detrimental to his health, such as drinking alcohol and harassing wife's family; and that the most stressful thing of all for husband to do from husband's point of view would be to pay wife any money whatsoever.

## II. PRELIMINARY MATTERS: Accepting Benefits of Judgment

■ Wife's cross-appeal attacks the characterization of certain property as separate, attacks the valuation of other property, and contends that the trial court did not make an equal division of the property. Husband responds that the rule in *Courtney v. Nathanson*, 112 N.M. 524, 525, 817 P.2d 258, 259 (Ct.App.1991), precludes this court from considering wife's contentions on her cross-appeal. *Courtney* stands for the general proposition that a party waives her right to appeal when she accepts the benefits of a judgment. Husband asserted

this contention in his answer brief to wife's brief in chief on cross-appeal. Wife did not file a reply brief or otherwise controvert the facts or law on which husband relied.

We note that the rule on which husband relies is "riddled with exceptions." *Burnham v. Bray*, 104 Idaho 550, 553, 661 P.2d 335, 338 (Idaho Ct.App.1983). We list some of the exceptions here for the purpose of demonstrating how complex this issue is. We express no opinion on whether these exceptions do or should represent the law in New Mexico. One exception is that the acceptance of benefits of one portion of the judgment does not bar an appeal from a disconnected portion. *Id.* Sometimes courts refer to the "severability" of judgments and have indicated that in divorce matters, issues relating to children are severable from issues relating to the divorce itself, the division of property, and other matters. *See Lipshy v. Lipshy*, 525 S.W.2d 222, 223–24 (Tex.Civ.App.1975); *Reed v. Reed*, 82 Ariz. 168, 169, 309 P.2d 790, 791 (1957). Although the case at bar involves only property, some courts have indicated that the general rule does not even apply when only marital property is at issue because both parties have rights to such property that exist prior to judgment. *Finck v. Finck*, 9 Ariz.App. 382, 385–86, 452 P.2d 709, 712–13 (1969); *see also Stice v. Stice*, 81 Cal.App.2d 792, 185 P.2d 402, 405 (1947). Another exception exists when reversal of the judgment will not reduce the benefits the appealing party has secured. *McCartney v. Mead*, 541 S.W.2d 202, 205 (Tex.Civ.App.1976). Finally, *McCartney* recognized an exception in which financial duress compels involuntary acceptance of the judgment's benefits. *Id.*

Wife does not contend that any of these exceptions apply in this case, and without her argument we are reluctant to conclude that they do apply. Except when warranted to affirm a judgment in pursuance of the maxim that there is a presumption of regularity in the proceedings below, *see State v. Garcia*, 98 N.M. 186, 189, 646 P.2d 1250, 1253 (Ct.App.1982), or under limited exceptions for extraordinary cases, *see New Mexico Dep't of Human Servs., Income Support Div. v. Tapia*, 97 N.M. 632, 634, 642 P.2d 1091, 1093 (1982), we do not assert contentions on behalf of parties or do their research for them, *see In re Adoption of Doe*, 100 N.M. 764, 765, 676 P.2d 1329, 1330 (1984). We will not do so in this case and, accordingly, will not address wife's issues on cross-appeal.

## III. PRELIMINARY MATTERS: Form of Answer Brief

■ Husband has asked us to strike significant portions of wife's answer brief because it did not respond to husband's issues in point-for-point narrative. We decline to do so. The old rules of civil appellate procedure used to provide for a "separate argument in response to each point argued by appellant." NMSA 1978, Civ.App.R. 9(n)(4). The current rules of appellate procedure simply require the answer brief, like the brief in chief, to contain "an argument, which shall contain the contentions." SCRA 1986, 12–213(A)(3), (B) (Repl.1992).

## IV. SUBSTANTIAL EVIDENCE

■ Husband contends that the trial court erred in failing to find that the parties owed a debt to his parents for their work in connection with a pecan orchard business that the parties purchased from the parents' bankrupt estate. After the purchase, the parents still worked on the orchards despite the fact that they were both approaching seventy years old. Husband requested that the trial court find that the parties owed his parents $175,000 for this work.

Husband relies on his own testimony and that of his father to the effect that his parents provided valuable services to the farm. Husband explained how many workers the farm would need and how many it actually had, drawing the inference that his parents made it possible to operate with fewer workers. Both husband and his father estimated how much the services were worth. Husband said it would have cost $35,000 a year for the six years if others had been hired to perform the services. His father said the services were worth

$175,000 based on a calculation of minimum wage.

There was no evidence of an express agreement between the parties and husband's parents. The parents testified that it had been their "understanding" that they would be paid, and husband's father first calculated the amount he thought he was due and told husband about it a week or so before the trial "because of this lawsuit." There was other evidence that husband's parents were paid $500 per month for farm expenses. The trial court's findings did acknowledge a debt to husband's parents in the amount of $42,000 in connection with their work on the orchard.

On this state of the record, the trial court was not required to credit the self-interested testimony of husband and his parents as to either the existence of an agreement or obligation to pay husband's parents for their services or the amount those services were worth. *See Nunez v. Smith's Management Corp.*, 108 N.M. 186, 191, 769 P.2d 99, 104 (Ct.App.1988). The trial court's refusal to include this as a community debt is therefore affirmed.

## V. ALIMONY OF $1 PER YEAR

Husband contends that by its award of alimony of $1 per year, the trial court made a patent attempt to avoid the rule in *Unser v. Unser*, 86 N.M. 648, 654, 526 P.2d 790, 796 (1974), which held that a trial court could not generally reserve jurisdiction to award alimony at a future time when no alimony is awarded in the original judgment. Husband asserts, "The trial court could not find a present need for alimony for the [wife] so the court fashioned a way to hold [husband] 'hostage' to the possibility of paying alimony at some time for the rest of his life."

The underlying premise of husband's issue is that the trial court found that wife does not need alimony at the present time. We do not believe this underlying premise is accurate. On the contrary, as demonstrated by the trial court's conclusions requiring husband to timely pay the installments under the property division portion of the decree and the trial court's express finding to this effect, the trial court believed that wife did need support generally, but that if husband paid his obligations under the division of property, such support would be provided. Of course, need is the first criterion in determining alimony. *Weaver v. Weaver*, 100 N.M. 165, 167, 667 P.2d 970, 972 (1983). The trial court made an express finding that the assets awarded to wife would not provide her with income to meet her needs unless husband made the payments ordered by the trial court and made them in a timely manner.

While husband appears to challenge this finding by stating that wife had no need for alimony at the time of trial, he has not properly argued this point. Husband has made no effort to provide this court with any statement of facts, with references to the transcript, *see* SCRA 1986, 12–213(A)(2) (Repl.1992), concerning wife's income, assets, or expenses. Under these circumstances, we consider this issue no further. *See Caillouette v. Hercules, Inc.*, 113 N.M. 492, 498, 827 P.2d 1306, 1312 (Ct.App.1992). The trial court's finding concerning need is affirmed.

Thus, this is not a case in which the trial court is hedging against future changes of circumstances and attempting to preserve jurisdiction where there should be none. Rather, this is a case in which wife is needy now, and the trial court recognized that need by its manner of division of the property.

Moreover, we cannot say the award of $1 per year was an abuse of discretion considering the circumstances of the property division. *See Russell v. Russell*, 111 N.M. 23, 27, 801 P.2d 93, 97 (Ct.App.1990) (award of alimony rests in trial court's discretion and will not be overturned unless the amount awarded is contrary to all reason); *see also Mindlin v. Mindlin*, 41 N.M. 155, 158, 66 P.2d 260, 262 (1937) (granting of alimony and fixing of its amount and duration is peculiarly within the discretion of the trial court).

In view of this holding we need not consider whether language in *Benavidez v.*

*Benavidez,* 99 N.M. 535, 538, 660 P.2d 1017, 1020 (1983) (as long as "some alimony" is reserved, there is continuing jurisdiction), was meant to adopt what appears to be well-established law in other jurisdictions. *See Holstein v. Holstein,* 186 W.Va. 385, 412 S.E.2d 786, 791 (1991) ($1 per year award of alimony to someone who is not now needy, but about whose future need there is some uncertainty, is approved for the purpose of preserving jurisdiction).

## VI. EXERCISE OF CONTEMPT POWERS

■ Husband complains both of the trial court's threat of contempt powers in the final decree and of its use of contempt powers later. In the final decree, the trial court inserted a provision, which we have quoted above, to the effect that, if husband pays joint creditors and fails to pay wife, the trial court will consider such behavior contempt and will not credit husband with payment. This provision, together with the provision granting wife a lien on husband's property, was apparently in response to husband's actions during the pendency of the case, which the trial court viewed as foreshadowing that he might attempt to evade his obligations. Husband contends that the trial court was without power to insert the provision concerning debts because it deprived him of his right to pay debts creditors might legitimately seek from him and then to set these off against obligations to wife.

■ Based on the circumstances of the case, the trial court could have found that husband would try to avoid paying wife anything the trial court ordered him to pay in order to avoid supporting wife, and he would try to accomplish this by paying creditors and then claiming that such payments should be offset against his obligations to wife. We believe it noteworthy that husband has cited no cases or other authorities for his argument. When parties fail to cite authorities in support of their contentions, we are entitled to assume that they could not find support after diligent search. *Doe,* 100 N.M. at 765, 676 P.2d at 1330.

In addition, husband has failed to note that he is not prohibited from paying creditors. The trial court simply ordered that husband must first seek its permission before paying the creditors and then expecting to set that payment off against the obligations to wife. Because the court-ordered payments to wife were intended to be the source of her support, we believe that the trial court acted appropriately in acting to insure that husband would not be able to unilaterally cut off wife's support.

Following the entry of the final decree, the trial court held husband in civil contempt several times for failing to comply with the payment provisions of the final decree. Husband cites *In re Hooker,* 94 N.M. 798, 800, 617 P.2d 1313, 1315 (1980), for the proposition that the trial court was without authority to impose a fine of $500 per day because punishment for civil contempt is designed solely to remedy or reimburse the party injured by the contempt. It is true that damages for civil contempt are limited to reimbursement under *Hooker.*

■ However, civil contempt has purposes additional to providing remedial damages to an injured party. Jail time and fines may be imposed for civil contempt if their purpose is to coerce compliance with court orders. *State v. Pothier,* 104 N.M. 363, 369, 721 P.2d 1294, 1300 (1986). Thus, in *Gedeon v. Gedeon,* 96 N.M. 315, 316–17, 630 P.2d 267, 268–69 (1981), civil contempt fines of $500 per day for each day the father did not return the children to the mother were upheld because the purpose of the fines was to coerce compliance with the trial court's order requiring the return of the children. Our cases draw the distinction between civil and criminal contempt by listing two purposes for each: the purpose of civil contempt is to coerce compliance and provide a remedy, and the purpose of criminal contempt is to punish a violator and preserve the authority of the court. *Rhinehart v. Nowlin,* 111 N.M. 319, 326, 805 P.2d 88, 95 (Ct.App.1990). The fines of $500 per day in this case were appropriate civil contempt fines and, thus, their amount was not limited to wife's expenses.

■ The trial court also held husband in contempt for failing to appear at the March 8 hearing. To the extent that this was criminal contempt because it was to punish a violation and preserve the authority of the court, husband contends that the trial court lacked jurisdiction because there was no proper initiation of criminal contempt proceedings. We agree with this contention because husband was never personally served with notice of the contempt charge. *See Lindsey v. Martinez*, 90 N.M. 737, 739–40, 568 P.2d 263, 265–66 (Ct.App. 1977). However, this does not afford husband any practical relief because he was not sanctioned for any criminal contempt. To the extent that the trial court awarded wife her fees and expenses of attending the hearing that had to be held again because husband failed to attend, this was proper under the trial court's remedial civil contempt powers noted above. *See Horcasitas v. House*, 75 N.M. 317, 320, 404 P.2d 140, 142 (1965).

■ Husband argues that there was no factual basis for holding him in contempt after he signed the note and mortgages because, by so signing them, he complied with the trial court's judgment. This contention is specious. In the first place, the trial court's judgment required periodic payments that were merely evidenced by the note; husband never made the payments. In the second place, at the time husband signed the note secured by the mortgages, he knew that he had deeded the properties away and recorded the deeds. Husband's actions by signing the worthless note and mortgages in no way complied with the judgment.

■ Husband generally contends that the use of contempt powers is not permissible to secure compliance with an ordinary civil judgment such as the property division judgment, and that wife should stand in no different shoes from any other general creditor of husband. We agree with husband that contempt may not be used to enforce ordinary civil judgments. In the domestic relations context, a party may not be held in contempt for failure to pay a debt arising out of the property division, but may be held in contempt for failure to pay a debt arising out of an award of support or maintenance. *Sosaya v. Sosaya*, 89 N.M. 769, 769–70, 558 P.2d 38, 38–39 (1977). The rule in *Sosaya* is consistent with the law in other jurisdictions. Imprisonment for failure to comply with a property division is prohibited unless the division somehow relates to support or alimony. *Stone v. Stidham*, 96 Ariz. 235, 393 P.2d 923 (1964) (en banc); *see also Potter v. Wilson*, 609 P.2d 1278 (Okla.1980).

■ Where we disagree with husband is that we believe the property division in this case was directly related to alimony by the express words of the trial court's decision. Thus, as with husband's argument concerning the $1 per year in alimony, the factual premise for his argument is incorrect. Once this is understood, it is clear that the trial court had the power to enforce its orders concerning the so-called property division by using its contempt powers.

■ The payments husband was supposed to make under the property division portion of the final decree were not mere civil money judgments. They were recognized to be in the nature of alimony or support for wife to meet her needs. A divorce court has discretion to use available means including contempt to insure that its orders of support are obeyed. *See Corliss v. Corliss*, 89 N.M. 235, 239, 549 P.2d 1070, 1074 (1976). Nor is it a violation of the constitutional provision against imprisonment for debt, N.M. Const. art. II, § 21, to jail a person who does not pay a contempt fine. *Atlas Corp. v. DeVilliers*, 447 F.2d 799, 803 (10th Cir.1971), *cert. denied*, 405 U.S. 933, 92 S.Ct. 939, 30 L.Ed.2d 809 (1972); *Securities & Exchange Comm'n v. Diversified Growth Corp.*, 595 F.Supp. 1159, 1172 (D.D.C.1984).

We see no reason why the trial court could not insure that wife would be adequately supported by holding husband in civil contempt when husband (1) refused to pay the first installment due under the final decree; (2) transferred his property beyond the reach of New Mexico creditors;

(3) refused to show up at hearings of which he had notice; (4) expressed his intention never to pay wife a penny; (5) threatened bankruptcy and falsely asserted that he had filed such for the purpose of denying wife payment under the decree; and (6) becomes deathly ill, to the point that he cannot be incarcerated, whenever he thinks of having to pay wife the support ordered by the trial court. What the trial court did regarding contempt was lawful under the cases cited above and the outrageous facts of this case. We therefore affirm the decree and post-decree orders of civil contempt in their entirety.

## VII. MODIFICATION OR ENFORCEMENT OF DECREE

We agree with husband, however, that the court lacked jurisdiction to modify its decree during the pendency of this appeal. As a general rule, while a court has jurisdiction after the judgment to enforce that judgment, it lacks jurisdiction to modify the judgment except under limited circumstances. *Mendoza v. Mendoza,* 103 N.M. 327, 706 P.2d 869 (Ct.App.1985). Because husband did not attempt to stay the original decree by supersedeas or otherwise, wife was free to attempt to enforce it during the appeal. *See Bank of Santa Fe v. Honey Boy Haven, Inc.,* 106 N.M. 584, 586, 746 P.2d 1116, 1118 (1987). The question for resolution is how to characterize what the trial court did: was it enforcement or was it modification?

To be sure, the trial court was attempting to enforce its final decree. The factual basis for its actions is contained in the findings prefacing the order awarding wife a particular piece of property previously found to be husband's separate property. The trial court specifically recognized that its prior orders had not proved sufficient to enforce its judgments and that wife should not have to expend time, money, and effort to enforce compliance.

However, this order was entered in response to a motion to "modify" the final decree by providing that the $1 in alimony be changed to $155,809 plus costs and fees. Although the trial court did not appear to modify the alimony portion of the final decree, it did provide that the award of the property was to be "in lieu of a ten (10) year payout."

"Enforce" means to compel obedience to, or to cause the provisions to be executed. *Commissioner of Pub. Health v. Board of Health,* 350 Mass. 507, 215 N.E.2d 745, 746 (1966). "Modify" on the other hand means to alter, change, or vary. *Capell v. Capell,* 164 Va. 45, 178 S.E. 894, 895 (1935). Pursuant to these definitions, it appears that the trial court's actions partook of both enforcement and modification. However, while enforcement was the impetus for the trial court's actions, we believe the dominant effect was to change material portions of the final decree. The final decree provided for a ten-year payout on the community property division and awarded the Chilton Inn property to husband as separate property. The order about which husband complains requires husband to deed the Chilton Inn to wife as her share of the community assets.

By our opinion, we do not mean to imply that the court is powerless to insure that husband provides for wife as ordered by the final decree. In *Mendoza,* 103 N.M. at 331, 706 P.2d at 873, we pointed out that relief pursuant to SCRA 1986, 1–060(B) was available on proper showing. It appears that the facts of this case would satisfy several of the provisions of that rule, including fraud and exceptional circumstances. However, a trial court cannot grant relief pursuant to that rule during the pendency of an appeal, *Archuleta v. New Mexico State Police,* 108 N.M. 543, 548, 775 P.2d 745, 750 (Ct.App.1989), as the trial court here did. Also, a trial court may modify judgments relating to alimony when the circumstances render such a change proper. NMSA 1978, § 40–4–7(B)(2) (Repl.Pamp.1989); *see Higginbotham v. Higginbotham,* 92 N.M. 412, 413, 589 P.2d 196, 197 (1979) (rule that the court loses jurisdiction after 30 days does not apply to modifying awards of support). Here, however, the express language of the trial court's order did not modify an award of support, but rather altered the payment

plan for the community property division. The portion of the trial court's order awarding wife the Chilton Inn property and ordering husband to deed it to wife must therefore be reversed.

## VIII. ATTORNEY FEES

Wife made a request for attorney fees in connection with her appeal. Because we decline to address her appeal, we decline to award her fees in connection therewith. Wife has also made a general request for attorney fees and costs in connection with all consolidated appellate proceedings. Because she was the appellee in all other proceedings, she has no allowable costs for the docket fee, record, or transcripts. *See* SCRA 1986, 12–403(B) (Repl. 1992). However, wife enjoyed a large measure of success in defending against husband's appeal, which defense included various interlocutory proceedings on stay matters. Because of wife's success, *see Lewis v. Lewis,* 106 N.M. 105, 117, 739 P.2d 974, 986 (Ct.App.1987), and because the trial court was of the opinion that wife needed assistance in presenting the post-decree aspects of her case, *see Allen v. Allen,* 98 N.M. 652, 655, 651 P.2d 1296, 1299 (1982), we award wife $3000 for the services of her attorney on appeal, in addition to fees we have previously awarded her.

## CONCLUSION

Except for the portion of the orders holding husband in criminal contempt and modifying the final decree by ordering husband to transfer a certain property to wife, all other provisions of all other orders, including the final decree, are affirmed.

IT IS SO ORDERED.

DONNELLY and BLACK, JJ., concur.