IA CONSTRUCTION CORPORATION
and Liberty Mutual Insurance
Co., Petitioners

v.

WORKERS' COMPENSATION
APPEAL BOARD (RHODES),
Respondent.

Commonwealth Court of Pennsylvania.

Argued Nov. 10, 2014.

Decided Feb. 19, 2015.

Terry Lee M. Bashline, Pittsburgh, for petitioners.

Thomas C. Baumann, Pittsburgh, for respondent.

BEFORE: BONNIE BRIGANCE LEADBETTER, Judge, P. KEVIN BROBSON, Judge, and JAMES GARDNER COLINS, Senior Judge.

OPINION BY Judge BROBSON.

Petitioners IA Construction Corporation and Liberty Mutual Insurance Co. (collectively, Employer) petition for review of an order of the Workers' Compensation Appeal Board (Board). The Board affirmed the decision of a Workers' Compensation Judge (WCJ), which denied Employer's modification petition pursuant to the Workers' Compensation Act (Act).[1] For the reasons set forth below, we reverse the Board's order.

On January 9, 2007, WCJ David Torrey (WCJ Torrey) issued a decision granting Jeffrey Rhodes' (Claimant) claim petition, finding that Claimant sustained the following injuries during his employment with Employer: a traumatic brain injury with organic affective changes and persistent cognitive problems, particularly memory impairment, posttraumatic headaches, posttraumatic vertigo or impaired balance, and musculoskeletal or myofascial neck and back injuries. On July 29, 2010, Employer filed a modification petition, alleging that as of June 24, 2010, it was seeking modification of Claimant's benefits based on an impairment rating evaluation (IRE) performed by M. Bud Lateef, M.D.,[2] which resulted in a 34% impairment rating of Claimant. Claimant filed an answer denying the allegations of the modification petition, and the matter was assigned to WCJ Cheryl A. Ignasiak (WCJ Ignasiak), who held hearings on the matter.

1. Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. §§ 1–1041, 2501–2708.

2. Dr. Lateef is board-certified in physical medicine, rehabilitation, and pain medicine, and he is certified by the Bureau of Workers' Compensation (Bureau) to perform IREs. (Reproduced Record (R.R.) at 49a.)

Following the hearings, WCJ Ignasiak issued a decision denying Employer's modification petition. In so doing, WCJ Ignasiak made the following relevant findings with regard to Dr. Lateef's medical report and deposition testimony, which Employer submitted in support of its modification petition. Based on his review of Claimant's medical records and his physical examination of Claimant, Dr. Lateef diagnosed Claimant with traumatic brain injury, "cervical HNP status post surgery," [3] and gait dysfunction. (Reproduced Record (R.R.) at 50a.) Dr. Lateef assigned Claimant a 34% whole person impairment rating, which Dr. Lateef based on the individual impairment ratings he assigned to Claimant for each of Claimant's three diagnoses.[4] (*Id.*) Dr. Lateef further opined that Claimant had reached maximum medical improvement. (*Id.*)

Dr. Lateef explained that Claimant's three diagnoses were the conditions that were permanently limiting Claimant's ability to function at that point in time and noted that the impairment ratings were not based on Claimant's initial injuries, but rather on what was currently causing his disability. (*Id.*) With regard to any other problems or injuries, such as persistent cognitive problems, memory impairment, posttraumatic headaches, posttraumatic vertigo, and impaired balance, Dr. Lateef indicated that these injuries were lumped into Claimant's traumatic brain injury diagnosis. (*Id.* at 51a.) Dr. Lateef also indicated that any musculoskeletal or myofascial neck and back injuries were included in the same category with the cervical HNP diagnosis. (*Id.*)

In conducting her analysis, WCJ Ignasiak rejected Dr. Lateef's opinion that Claimant had a 34% impairment rating. (*Id.*) First, WCJ Ignasiak noted that Dr. Lateef only rated three of Claimant's recognized injuries and lumped several of Claimant's other injuries into the three categories Dr. Lateef rated. (*Id.*) WCJ Ignasiak explained that she did not find Dr. Lateef's testimony persuasive that all of Claimant's accepted injuries as identified by WCJ Torrey should be placed in the categories chosen by Dr. Lateef. (*Id.*) As a consequence, WCJ Ignasiak concluded that Dr. Lateef did not address all of the diagnoses that should have been considered part of the work injury when calculating Claimant's impairment rating. (*Id.* at 52a.)

Second, WCJ Ignasiak noted that a significant portion of Claimant's impairment rating was due to the cognitive impairments that Claimant exhibited due to his traumatic brain injury. (*Id.* at 51a.) WCJ Ignasiak reasoned that based on Dr. Lateef's report and testimony, it appeared that his impairment rating of Claimant's traumatic brain injury was primarily based on records he had reviewed, rather than on any examination that he performed. (*Id.*) WCJ Ignasiak observed that Dr. Lateef had reviewed numerous records regarding Claimant's treatment, but that there was only one record Dr. Lateef reviewed for the entire year of 2010. (*Id.*) The WCJ further observed that Dr. Lateef was a physical medicine and pain manage-

---

**3.** According to Dr. Lateef, this diagnosis related to "a cervical condition that, from the history [Dr. Lateef] received, was a cervical disc herniation." (R.R. at 34a.)

**4.** Specifically, Dr. Lateef assigned a 20% impairment rating to Claimant for his traumatic brain injury, a 10% impairment rating to Claimant for his gait impairment, and an 8%

impairment rating to Claimant for his cervical condition. (R.R. at 50a.) "He indicated that the three whole person impairment values of 8%, 20%, and 10% were added in using the Combined Value Chart, [and] a 34% Whole Person Impairment rating was assigned." (*Id.*)

ment physician, and that there was no indication in the record that he treats persons with traumatic brain injuries on a consistent basis. (*Id.*) The WCJ determined that, given the fact that the majority of Claimant's current problems are related to his traumatic brain injury, it would be more reasonable to have an IRE completed by someone who was more qualified than Dr. Lateef in that specialty. (*Id.*) The WCJ, therefore, was not persuaded by Dr. Lateef's opinion regarding Claimant's impairment level from his brain injury simply based on his review of medical records, which were clearly not within his specialty, and his cursory examination regarding Claimant's mental status. (*Id.*) Thus, the WCJ concluded that Employer failed to establish that it was entitled to a change of Claimant's benefits from total to partial disability based on the IRE. (*Id.* at 52a.)

Employer appealed to the Board, which affirmed. Specifically, the Board concluded that WCJ Ignasiak did not err in rejecting Dr. Lateef's testimony on the basis

that WCJ Ignasiak did not think he was the proper specialist to perform the IRE or on the basis that he did not consider all of Claimant's injuries in rendering Claimant's impairment rating. (*Id.* at 58a–59a.) In so doing, the Board reasoned that Employer's arguments on appeal were simply challenges to the weight WCJ Ignasiak assigned to the evidence. (*Id.*) The Board explained that because determinations as to evidentiary weight are solely for the WCJ as fact finder, it would not disturb WCJ Ignasiak's decision.[5] (*Id.*) Employer then petitioned this Court for review.

On appeal,[6] Employer essentially argues that the Board erred in affirming WCJ Ignasiak's decision, because WCJ Ignasiak improperly rejected Dr. Lateef's impairment rating on the basis that he did not refer the case to another specialist and did not properly rate all of Claimant's injuries.[7] Employer contends that an IRE physician is not required to refer the IRE to a specialist and is required to rate only the injuries that are disabling as of the date of the IRE. Employer also argues

---

5. Notably, Commissioner Gabig and Chairman Frioni dissented.

6. This Court's standard of review is limited to determining whether constitutional rights were violated, whether an error of law was committed, or whether necessary findings of fact are supported by substantial evidence. Section 704 of the Administrative Agency Law, 2 Pa.C.S. § 704.

7. Employer also argues that substantial evidence does not support WCJ Ignasiak's finding that Claimant suffered from other disabling conditions. Employer notes that WCJ Ignasiak wrote that the most significant part of Claimant's disability was his cognitive issues related to the traumatic brain injury, indicating that this was the reason why Dr. Lateef should have referred the case to another specialist. Employer argues, however, that no testimony of record exists as to what is the "most disabling" part of Claimant's condition. Employer contends that while WCJ Ig-

nasiak may have inferred this observation from Dr. Lateef's testimony, there is no direct evidence on Claimant's cognitive difficulties.

We reject Employer's argument. WCJ Ignasiak found that Dr. Lateef diagnosed Claimant with a traumatic brain injury, indicating that he classified Claimant with an "alteration in mental status, cognitive and higher integrative function with a moderate abnormality." (R.R. at 50a.) In so doing, Dr. Lateef assigned a 20% impairment rating to Claimant for that diagnosis. (*Id.*) Dr. Lateef also diagnosed Claimant with a gait impairment and cervical condition, to which Dr. Lateef assigned a 10% and 8% impairment rating, respectively. (*Id.*) These findings, which are undisputed, support the WCJ's determinations that "a significant portion of Claimant's impairment rating is due to the cognitive impairments that Claimant exhibits due to his traumatic brain injury" and that "the majority of Claimant's current problems are related to his traumatic brain injury." (*Id.* at 51a.) Thus, Employer's argument is without merit.

that Dr. Lateef performed the IRE in accordance with the American Medical Association "Guides to the Evaluation of Permanent Impairment" (AMA Guides) pursuant to the Act. Further, Employer argues that no provision of the Act permits a WCJ to reject the findings of the IRE and that, to the contrary, a WCJ has no discretion to reject the impairment rating resulting from an IRE under Section 306(a.2)(1) of the Act.[8] Employer argues that once a claimant's degree of impairment is determined from the IRE, a claimant can only challenge that rating on appeal by presenting evidence that the rating equals or exceeds 50%, pursuant to Section 306(a.2)(4) of the Act.[9] Moreover, Employer notes that: (1) Employer has no ability to influence the choice of IRE physician or his findings; (2) Claimant did not object to the use of Dr. Lateef as the IRE physician at any point; (3) the WCJ did not suggest a more suitable IRE physician or exercise her power to conduct a further investigation under Section 420(a) of the Act;[10] and (4) neither Claimant nor the WCJ suggested that the impairment rating would have been different had a specialist been consulted.

 With regard to impairment rating determinations, Section 123.105(b) of the regulations, 34 Pa.Code § 123.105(b), provides:

(b) To ascertain an accurate percentage of the employee's whole body impairment, when the evaluating physician determines that the compensable injury incorporates more than one pathology, the evaluating physician *may* refer the employee to one or more physicians specializing in the specific pathologies which constitute the compensable injury. Any physician chosen by the evaluating physician to assist in ascertaining the percentage of whole body impairment shall possess the qualifications as specified in [34 Pa.Code § 123.103(a)-(b) ] (relating to physicians). The referring physician remains responsible for determining the whole body impairment rating of the employee.

(Emphasis added.) Thus, it is true that Dr. Lateef was not required to refer Claimant to a specialist in conducting the IRE. It is also true that an impairment rating is to be based on the claimant's condition on the date of the IRE physician's evaluation. *Westmoreland Reg'l Hosp. v. Workers' Comp. Appeal Bd. (Pickford)*, 29 A.3d 120, 122, 128 (Pa. Cmwlth.2011) (providing that "it is the claimant's physical condition at the time of the IRE that governs the validity of the IRE" and that "[t]he IRE produces a snapshot of the claimant's condition at the time of the IRE, not a survey of the claimant's work-related injuries over a period of time"), *appeal denied*, 615 Pa. 781, 42 A.3d 295 (2012).

---

**8.** 77 P.S. § 511.2(1) (providing, in part, that "[t]he degree of impairment *shall* be determined based upon" an IRE (emphasis added)).

**9.** Added by the Act of June 24, 1996, P.L. 350, 77 P.S. § 511.2(4) (providing, in part, that "[a]n employe may appeal the change to partial disability at any time during the five hundred-week period of partial disability; Provided, [t]hat there is a determination that the employe meets the threshold impairment rating that is equal to or greater than" 50%).

**10.** 77 P.S. § 831 (providing, in part, that "a [WCJ], if ... he deem[s] it necessary, may, of ... his own motion, either before, during, or after any hearing, make or cause to be made an investigation of the facts set forth in the petition or answer or facts pertinent in any injury under this act.... The ... [WCJ] may appoint one or more impartial physicians or surgeons to examine the injuries of the plaintiff and report thereon, or may employ the services of such other experts as shall appear necessary to ascertain the facts").

■ Here, Employer requested the IRE resulting in Claimant's 34% impairment rating *outside* of the 60–day window which would have entitled Employer to an automatic change in disability status under Section 306(a.2) of the Act.[11] *See Diehl v. Workers' Comp. Appeal Bd. (I.A.Constr.),* 607 Pa. 254, 5 A.3d 230, 245 (2010) ("If the IRE is requested within the 60–day period and the claimant's impairment rating is less than 50 percent, then the change in disability status is automatic.") When outside the 60–day window, the employer must seek a change in disability status via the traditional administrative process. *See Gardner v. Workers' Comp. Appeal Bd. (Genesis Health Ventures),* 585 Pa. 366, 888 A.2d 758, 766 (2005). Our Supreme Court has further explained that when

> the employer requests the IRE outside of the 60–day window and claims that the claimant's impairment rating is less than 50 percent, the IRE merely serves as evidence that the employer may use at a hearing before a WCJ on the employer's modification petition to establish that the claimant's disability status should be changed from total to partial. In that event, the IRE becomes an item of evidence just as would the results of any medical examination the claimant submitted to at the request of his employer. It is entitled to no more or less weight than the results of any other examination. The physician who performed the IRE is subject to cross-examination, and the WCJ must make appropriate credibility findings related to the IRE and the performing physician. The claimant, obviously, may introduce his own evidence regarding his degree of impairment to rebut the IRE findings.

*Diehl,* 5 A.3d at 245. Moreover, although a claimant may introduce his own evidence regarding his degree of impairment to rebut the IRE findings, he "may limit his defense to cross-examination of the IRE physician. The burden in an IRE proceeding rests with the employer." *Westmoreland,* 29 A.3d at 127 n. 10.

Here, WCJ Ignasiak rejected Dr. Lateef's opinion that Claimant had a 34% impairment rating. WCJ Ignasiak explained that she was not persuaded that all of Claimant's identified injuries should be placed in the categories chosen by Dr. Lateef. She also was not persuaded by Dr. Lateef's opinion regarding Claimant's impairment level from his brain injury simply based on his review of medical records, which were nót within his specialty, and his cursory examination regarding Claimant's mental status.

■ First, we note that qualifications for an IRE physician are set forth in Section 306(a.2)(1) of the Act, which provides that an IRE physician must be "licensed in this Commonwealth, . . . certified by an American Board of Medical Specialties approved board or its osteopathic equivalent and [be] active in clinical practice for at least twenty hours per week, chosen by agreement of the parties, or as designated

---

11. 77 P.S. § 511.2. Section 306(a.2)(1) of the Act provides that when an employe has received total disability compensation for 104 weeks, "unless otherwise agreed to, the employe shall be required to submit to a medical examination which shall be requested by the insurer within sixty days upon the expiration of the [104] weeks to determine the degree of impairment due to the compensable injury, if any." "If such determination results in an impairment rating that meets a threshold impairment rating that is equal to or greater than fifty per centum impairment[,] . . . the employe shall be presumed to be totally disabled and shall continue to receive total disability compensation benefits...." Section 306(a.2)(2) of the Act, 77 P.S. § 511.2(2). However, "[i]f such determination results in an impairment rating less than fifty per centum[,] . . . the employe shall then receive partial disability benefits" after proper notice. *Id.*

by the department." In addition, the IRE must be performed "pursuant to the most recent edition of the American Medical Association 'Guides to the Evaluation of Permanent Impairment.'" Section 306(a.2)(1) of the Act. Thus, whether a physician is qualified to perform an IRE is governed by the Act, and a WCJ may not impose greater qualifications than those set forth in the Act. Here, there is no dispute that Dr. Lateef satisfied the statutory standards to be qualified as an IRE physician.[12] WCJ Ignasiak, therefore, could not reject Dr. Lateef's testimony on the basis that brain injuries are not within his specialty, because to do so would impose standards in excess of those set forth in Section 306(a.2)(1) of the Act.

■ WCJ Ignasiak identified other reasons for finding Dr. Lateef's testimony to be unpersuasive or lacking in credibility. Specifically, WCJ Ignasiak disagreed with the manner in which Dr. Lateef categorized Claimant's injuries and his opinion regarding Claimant's impairment level from his brain injury. The reasons for WCJ Ignasiak's rejection of Dr. Lateef's opinion, however, do not appear to have any basis in the record. Although a "WCJ is the sole arbiter of the credibility and the weight of testimony and other evidence" and "is free to reject or accept the testimony of any witness in whole or in part," the findings of the WCJ must be "supported by substantial evidence." *O'Donnell v. Workers' Comp. Appeal Bd. (United Parcel Serv.)*, 831 A.2d 784, 789 (Pa.Cmwlth. 2003). Thus, if a WCJ is to reject an IRE and the deposition testimony of the doctor who conducted the IRE as unpersuasive, there must be evidence of record to support the bases for that rejection. In other words, a WCJ's opinion as to the insufficiency of an IRE cannot stand without some record support. Here, WCJ Ignasiak does not cite any provisions of the AMA Guides or other evidence in support of her reasoning that Dr. Lateef miscategorized or improperly grouped Claimant's injuries or that he improperly calculated Claimant's impairment rating. Moreover, Claimant did not elicit any evidence that could support WCJ Ignasiak's reasoning. In the absence of any contradictory evidence, there simply was not substantial evidence of record to which WCJ Ignasiak could point in support of disregarding Dr. Lateef's testimony.[13]

---

12. Section 306(a.2)(1) of the Act provides:
 The degree of impairment shall be determined based upon an evaluation by a physician who is licensed in this Commonwealth, who is certified by an American Board of Medical Specialties approved board or its osteopathic equivalent and who is active in clinical practice for at least twenty hours per week, chosen by agreement of the parties, or as designated by the department, pursuant to the most recent edition of the American Medical Association "Guides to the Evaluation of Permanent Impairment."

13. The Court agrees with the reasoning of Chairman Frioni in his dissenting opinion, wherein he wrote:
 I respectfully dissent, however, not because I find that the WCJ was necessarily wrong in her conclusion that Dr. Lateef should have sent out to a more qualified physician for a record review, it would have undoubtedly been the more desired result, but the doctor was not so required. Furthermore, procedurally, [Employer], although the initiating party of the IRE, makes it[s'] request to the Workers' Compensation Bureau who chooses the IRE physician and assigns the duty of the report. [Employer] has no ability to affect the process and has no ability to supplement the IRE process short of asking for an entirely new IRE [to] be performed again at [Employer's] expense. In short, although Dr. Lateef's report could have been greatly improved upon, it did, however, follow the procedure and it did meet the legal requirements dictated by the legislature. Although it was [Employer's] burden, this was not a situation where the WCJ determined that ... Claimant's medical evidence was more compelling and convincing or that Dr. Lateef's opinion was legally in-

In the absence of substantial evidence in the record to support a basis to disregard Dr. Lateef's testimony, the WCJ and the Board erred in denying Employer's modification petition.

Accordingly, we reverse the order of the Board.

### ORDER

AND NOW, this 19th day of February, 2015, the order of the Workers' Compensation Appeal Board is hereby REVERSED.

competent, rather it was the WCJ's determination that the opinion of Dr. Lateef alone was not sufficiently convincing to grant the relief sought. I must conclude otherwise.

(R.R. at 62a.)