**[J-40-2016]**
**IN THE SUPREME COURT OF PENNSYLVANIA**
**WESTERN DISTRICT**

**SAYLOR, C.J., BAER, TODD, DONOHUE, DOUGHERTY, WECHT, JJ.**

| | | |
|---|---|---|
| IA CONSTRUCTION CORPORATION AND LIBERTY MUTUAL INSURANCE CO. | : | No. 18 WAP 2015 |
| | : | |
| | : | Appeal from the Order of the |
| | : | Commonwealth Court entered February |
| v. | : | 19, 2015 at No. 2151 CD 2013, |
| | : | reversing the Order of the Workers' |
| | : | Compensation Appeal Board entered |
| WORKERS' COMPENSATION APPEAL | : | November 5, 2013 at No. A11-1631. |
| BOARD (RHODES) | : | |
| | : | |
| APPEAL OF: JEFFREY RHODES | : | |
| | : | ARGUED: April 5, 2016 |

*OPINION*

**CHIEF JUSTICE SAYLOR**                    **DECIDED: MAY 25, 2016**

This appeal centers on the validity of a workers' compensation judge's decision to reject opinion testimony from an independent medical witness presented by an employer and insurer, in the absence of any contrary evidence adduced by the claimant.

**Background**

The matter arises in the context of Section 306(a.2) of the Workers' Compensation Act,[1] 77 P.S. §511.2, which was promulgated in 1996 as a component of

---

[1] Act of June 2, 1915, P.L. 736 (as amended 77 P.S. §§1-1041.1, 2501-2626) (the "WCA" or the "Act").

the General Assembly's efforts to address the rising costs of the workers' compensation liability scheme. *See Gardner v. WCAB (Genesis Health Ventures)*, 585 Pa. 366, 368 n.1, 888 A.2d 758, 759 n.1 (2005). Per the statute, after a workers' compensation claimant has received total disability benefits for a period of 104 weeks, the insurer is to request an impairment rating evaluation, or an IRE, which is a medical examination directed toward assessing the degree of a claimant's impairment attributable to a compensable injury. *See* 77 P.S. §511.2(1). "Impairment," in this context, connotes an anatomic or functional abnormality or loss resulting from a compensable injury that is reasonably presumed to be permanent, *id.* §511.2(8)(i), as distinguished from "disability," which more broadly concerns the loss of earnings capacity, *see Dillon v. WCAB (Greenwich Collieries)*, 536 Pa. 490, 501, 640 A.2d 386, 392 (1994) (explaining that the concept of "disability" under the Act encompasses both capacity to work *and job availability*). *See generally Diehl v. WCAB (I.A. Constr.)*, 607 Pa. 254, 277-79, 5 A.3d 230, 244-45 (2010) (elaborating upon the distinction between impairment and disability).

As a consequence of an effective impairment rating of less than 50 percent, the designation of the claimant's disability is converted from total to partial, thereby limiting the insurer's otherwise continuing liability to benefits payable throughout a maximum, closed-end period of 500 weeks. *See* 77 P.S. §511.2(7). Accordingly, one main purport of the statute is that a claimant whose condition may continue to meet the conventional definition of total "disability" -- a concept centered on overall earnings capacity encompassing both physical capacity and job availability -- may nevertheless be limited in the time frame during which he or she may receive workers' compensation benefits. *See Diehl*, 607 Pa. at 280, 5 A.3d at 246 (explaining that an employer/insurer is not required to produce evidence of earning power or job availability to support conversion of a disability designation from total to partial under Section 306(a.2), based on an

effective impairment rating of less than 50 percent). *See generally* DAVID. B. TORREY & ANDREW E. GREENBERG, 6 WEST'S PA. PRACTICE SERIES, WORKERS' COMPENSATION: LAW AND PRACTICE, §6:41 (3rd ed. 2008) ("[T]he 500 weeks provides a horizon with regard to the claimant's entitlement and the employer's liability.").

Of additional significance to the present matter, a duly rendered impairment rating is automatically effective if the employer/insurer requested the examination within 60 days after the expiration of the 104-week period prescribed by the statute. *See Gardner*, 585 Pa. at 373, 888 A.2d at 762 (construing Section 306(a.2)(1), 77 P.S. §511.2(1)). However, where, as here, the employer/insurer submits a later request for an IRE, the effect of the rating assessment is not automatic. Rather, such opinion must be vetted through the traditional administrative adjudicatory process, upon the employer/insurer's submission of a petition for modification of benefits. *See id.* at 382, 888 A.2d at 768.

In 2005, the appellant, Jeffrey Rhodes ("Claimant") suffered injuries in a vehicular accident, while in the course of his employment with the employer-appellee, IA Construction Corporation (hereinafter referred to with the company's insurer, Liberty Mutual Insurance Co., collectively, as "Employer"). Claimant filed a claim petition under the Act. *See* 77 P.S. §711.

In 2007, a workers' compensation judge granted this petition and awarded total disability benefits, *see id.* §511(1), finding that Claimant had sustained work-related injuries, including traumatic brain injury with organic affective changes, persistent cognitive problems, memory impairment, posttraumatic headaches, posttraumatic vertigo or impaired balance, and musculoskeletal or myofascial neck and back injuries.

Several years later, Employer filed a specialized notice under governing administrative regulations designed to initiate the impairment rating process. *See* 34

Pa. Code §123.102(e). The Department of Labor and Industry's Bureau of Workers' Compensation (the "Bureau"), in turn, designated M. Bud Lateef, M.D., a physician maintaining board certifications in physical, rehabilitation, and pain medicine, to conduct an IRE. Subsequently, based on the results of the ensuing examination -- and given that the IRE had been requested outside the period associated with a rating accorded automatic effect -- Employer filed a petition seeking to modify the workers' compensation benefits payable to Claimant. *See* 77 P.S. §772.

To develop a record, Employer proceeded with a deposition of Dr. Lateef, who assigned an impairment rating of 34 percent to Claimant. The physician testified that he had examined Claimant and reviewed various medical records. According to Dr. Lateef, he confirmed three primary present diagnoses, which he described as traumatic brain injury, a cervical condition in the nature of a herniated disc, and a spinal condition resulting in gait dysfunction. Dr. Lateef explained that he assigned a discrete impairment rating to each of these conditions, which, together, comprised the 34 percent "whole person impairment rating" under the Sixth Edition of the American Medical Association Guides to the Evaluation of Permanent Impairment (the "AMA Guides").[2] Deposition of M. Bud Lateef dated Feb. 10, 2011, in *Rhodes v. IA Constr. Corp.*, No. 390-391992 (DLI, Bur. of Workers' Comp.), at 14. The physician further opined that Claimant had reached a maximum level of medical improvement.

---

[2] In *Protz v. WCAB (Derry Area Sch. Dist.)*, 124 A.3d 406 (Pa. Cmwlth. 2015) (*en banc*), the Commonwealth Court held that Section 306(a.2)'s prescription for impairment ratings to proceed under the "most recent edition" of the AMA Guides effected an unconstitutional delegation of legislative authority. *See id.* at 416. While this issue has been otherwise accepted for review by this Court, *see Protz v. WCAB (Derry Area Sch. Dist.)*, ___ Pa. ___, 133 A.3d 733 (2016) (*per curiam*), it was not raised in the present case and will not be considered in this appeal.

In hearings before a workers' compensation judge (the "WCJ"), Employer presented Dr. Lateef's deposition testimony and the physician's underlying report.[3] Claimant did not testify on his own behalf, nor did he present medical testimony or other evidence.

The WCJ denied Employer's modification petition, rejecting Dr. Lateef's impairment rating opinion. Initially, the WCJ expressed a concern that Dr. Lateef had inappropriately "lumped" an array of discrete injuries into three categories. Decision of WCJ Cheryl A. Ignasiak in *Rhodes v. IA Constr. Corp.*, Claim No. 2847534, *slip op.* at 3 (DLI, Workers' Comp. Office of Adjudication Sep. 26, 2011). In this regard, the WCJ referred back to the series of injuries accepted by the workers' compensation judge in the initial claims determination and criticized Dr. Lateef for failing to adequately account for all of these.

The WCJ then focused her concern upon the significant portion of Claimant's impairment rating attributable to cognitive issues. In her estimation, Dr. Lateef's assessment of cognition was an unduly limited one, since he performed only a cursory examination and otherwise relied upon only a limited range of medical records. In the circumstances -- and particularly since Dr. Lateef specialized in physical medicine and pain management, not neurology -- the WCJ indicated that she was unpersuaded by his opinion.

On Employer's appeal, the WCAB affirmed in a divided opinion. The majority relied substantially on the principle that a WCJ, as the factfinder, appropriately

---

[3] Claimant initially lodged a hearsay objection relative to the report, which, at the time, the WCJ sustained. *See* N.T., Sep. 16, 2010, at 6. Later, however, such objection was apparently withdrawn, *see* Deposition of M. Bud Lateef dated Feb. 10, 2011, in *Rhodes,* No. 390-391992, at 14, and the WCJ admitted the report into evidence. *See* N.T., Apr. 18, 2011, at 5.

determines the weight to be accorded to the evidence presented. *See Rhodes v. IA Constr. Co.*, No. A11-1631, *slip op.*, at 4 (WCAB Nov. 5, 2013) ("The Judge chose to place great weight on the fact that Dr. Lateef was not more qualified in dealing with traumatic brain injuries and we won't disturb her determination."). The dissenting members, on the other hand, observed that, procedurally, the IRE had been conducted in accordance with the requirements of the Act. Furthermore, they attributed significance to the fact that employers do not participate in the process of selecting IRE physicians, and that such function is administered by the Bureau. *See* 77 P.S. §511.2(1) (specifying that IRE physicians are to be "chosen by agreement of the parties, or as designated by the department"). Although the dissenters acknowledged that "Dr. Lateef's report could have been greatly improved upon," *Rhodes*, No. A11-1631, *slip op.*, at 8 (Frioni, Chairman, dissenting), they nevertheless were sufficiently convinced by the report and associated opinion testimony.

On further appeal, the Commonwealth Court reversed in a published decision. *See IA Constr. Corp. v. WCAB (Rhodes)*, 110 A.3d 1096 (Pa. Cmwlth. 2015). From the outset of its analysis, the intermediate court stressed that Dr. Lateef met the WCA's stated qualifications for IRE physicians and that he followed the statutorily-prescribed methodology for conducting the examination. *See id.* at 1101-02 (citing 77 P.S. §511.2(1)). The court took the position, therefore, that the WCJ lacked the authority to reject the physician's testimony on the basis that cognitive impairment was outside the area of his specialization. *See id.* at 1102 (opining that rejection of an impairment rating based on a mismatch between the particular specialization of an examining physician and a claimant's condition "would impose standards in excess of those set forth in Section 306(a.2)(1) of the Act"). Although the court acknowledged that applicable regulations permit evaluating physicians to refer claimants to specialists, *see id.* at 1100

(referencing 34 Pa. Code §123.105(b)), it dismissed the relevance of those regulations upon the observation that such referrals are within the examiner's discretion.

In terms of the remaining reasons provided by the WCJ in support of her finding that Dr. Lateef's testimony was unpersuasive, the Commonwealth Court posited, based on the requirement that factual findings must be supported by substantial evidence, that "a WCJ's opinion as to the insufficiency of an IRE cannot stand without some record support." *Id.* at 1102. Noting Claimant's failure to adduce evidence on his own behalf, the intermediate court found the record to be lacking in these material regards. Along these lines, the court explained that the WCJ did not reference any provisions of the AMA Guides or other evidence in support of her conclusions that Dr. Lateef mischaracterized or improperly grouped Claimant's injuries or that he erroneously calculated the impairment rating. *See id.*

We allowed this appeal to address the issue, as framed by Claimant, of "[w]hether the Commonwealth Court overstepped its appellate function in making credibility judgments which is the sole function of the Workers' Compensation Judge." *IA Constr. Corp. v. WCAB (Rhodes)*, ___ Pa. ___, 121 A.3d 981 (2015) (*per curiam*). Generally, agency-level decisions -- such as those of the WCJ and WCAB here -- are to be affirmed on appeal so long as the essential findings are supported by substantial evidence and there has been no constitutional violation, procedural irregularity, or error of law. *See* 2 Pa.C.S. §704; *Leon E. Wintermyer, Inc. v. WCAB (Marlowe)*, 571 Pa. 189, 199, 812 A.2d 478, 485 (2002).

Presently, Claimant contends that the Commonwealth Court usurped the function of the WCJ, as fact-finder, by assigning greater weight to Dr. Lateef's opinion testimony than was attributed to such evidence at the agency level. According to Claimant, the WCJ supplied appropriate supporting justifications for her judgments, based upon her

determinations that Dr. Lateef "was not the proper specialist to perform the IRE and he did not properly assess all of the conditions that were disabling Claimant." Brief for Claimant at 21. Claimant maintains that, because Employer had not requested an IRE within the 60-day time frame specified in Section 306(a.2)(1), Dr. Lateef's testimony had no special effect, but rather, merely served as evidence in the proceedings on Employer's modification petition. Similarly, Claimant's *amicus*, the Pennsylvania Association for Justice, particularly criticizes the Commonwealth Court for treating Dr. Lateef's status as a qualified impairment rating examiner as foreclosing the rejection of his testimony by the fact-finder on its substantive merits. *See* Brief for *Amicus* Pa. Ass'n for Justice at 10 (positing that the qualifications for an IRE physician as set forth in Section 306(a.2)(1) "go to competency" but "do not . . . require that the 'qualified' witnesses' opinions be accepted as true or accorded more legal weight or credibility than any other type of evidence" (citing *Diehl*, 607 Pa. at 279, 5 A.3d at 245)).

Employer, on the other hand, stresses that Dr. Lateef was qualified to render an impairment rating evaluation per the standards set forth in Section 306(a.2) and in agency regulations, and that his examination was performed in accordance with the prescribed medical guides. As such, and consistent with the Commonwealth Court's determination, Employer maintains that the WCJ lacked the authority to reject his opinion testimony in the absence of any contrary evidence adduced by Claimant. *See, e.g.*, Brief for Employer at 19 ("[I]t was incumbent on the claimant to prove that the failure to consult with another specialist somehow resulted in a lowered impairment rating, and not just a lowered rating, but that a revised rating would have met the 50% threshold if another specialist had been consulted."). It is also Employer's position that any challenge to Dr. Lateef's qualifications was waived, as Claimant never objected to the Bureau's selection of the physician.

Employer acknowledges that "[u]sually, the Workers' Compensation Judge has the power to accept or reject the testimony of any witness, as a valid exercise of her fact-finding function." Brief for Employer at 12. Employer nonetheless asserts that this standard is not presently applicable, because: 1) Claimant produced no contrary evidence of any kind; and 2) independent ratings examiners are chosen by the Bureau of Workers' Compensation, not employers. In the latter regard, Employer recognizes that the Bureau's regulations allow for optional specialist referrals, but it notes that such referrals are within the discretion of the IRE physician. Employer also repeatedly asserts that Dr. Lateef accorded Claimant "the maximum rating permitted under the AMA guidelines." Brief for Employer at 7-8; *see also id.* at 16, 19. Based upon this representation, Employer deems it irrelevant whether or not Dr. Lateef was a specialist in assessing traumatic brain injuries.

In terms of the WCJ's concern with "lumping," Employer counters that there was no evidence presented that the categorizations selected by Dr. Lateef were not entirely consistent with the AMA Guides. To the degree that the WCJ expressed a concern that the physician had not rated all of the conditions accepted as injuries by the initial workers' compensation judge in the claim adjudication, Employer finds this to be inconsistent with the nature of impairment ratings, which focus on the examinee's current condition. *See id.* at 19-20 ("The IRE produces a snapshot of the claimant's condition at the time of the IRE, not a survey of the claimant's work-related injuries from the date of the injury to the date of the exam." (citing *Westmoreland Reg'l Hosp. v. WCAB (Pickford)*, 29 A.3d 120, 128 (Pa. Cmwlth. 2011))).

Broadly speaking, Employer charges that upholding the WCJ's decision would be tantamount to overturning the governing substantial-evidence review standard and "would allow a Workers' [Compensation] Judge to use her own medical opinions, and

untested knowledge outside of the record, in order to make a decision, and then hide behind a curtain that claims that all decisions are ultimately credibility decisions, and never should be disturbed." Brief for Employer at 21.

### *Discussion*

**A. General Observations Concerning Section 306(a.2)**

Before proceeding to the merits, we pause to reflect on Section 306(a.2) as a whole. As previously observed, the enactment imposed a cost-containment regime focused upon "impairment," as opposed to "disability," the latter of which traditionally was the core of the workers' compensation scheme. *See generally* TORREY & GREENBERG, 6 WEST'S PA. PRACTICE, §6:1. As with other instances of experimental legislation, conceptual and other difficulties with the impairment rating scheme have become evident over time. For example, the statute facially contemplates the initiation of a mandatory, determinative impairment rating evaluation process within a specific, narrow time frame. *See* 77 P.S. §511.2(1). However, the AMA Guides preclude such a rating unless and until the examinee has reached maximum medical improvement. *See Combine v. WCAB (Nat'l Fuel Gas Distribution Corp.)*, 954 A.2d 776, 779-80 & n.3 (Pa. Cmwlth. 2008).

Throughout the balance of the statute, the drafters appear to have assumed that the initial rating will always have been accomplished as directed, even though this will not be possible in all cases. For example, on its face, Section 306(a.2) authorizes subsequent impairment rating examinations to assess whether "the employe's condition *improves* to an impairment rating that is less than fifty per centum," 77 P.S. §511.2(5) (emphasis added), thus appearing to contemplate a baseline established by an initial

rating. Similarly, Section 306(a.2)(6) references the "status of the impairment," which may be determined through an ongoing series of medical evaluations. *Id.* §511.2(6).[4]

Ultimately, the statute pronounces that "[i]n no event shall the total number of weeks of total disability exceed one hundred four weeks for any employe who does not meet a threshold impairment rating that is equal to or greater than fifty per centum impairment," per the applicable guides. *Id.* §511.2(7). Again, this language seems to give no account for circumstances in which an impairment rating is impossible or no examination has occurred for some other reason. Moreover, despite the severe and explicit repercussions of this last provision upon claimants' entitlement to continuing benefits, even in instances in which suitable employment is unavailable, no mechanism is provided in the statute for claimants to seek and obtain an IRE on his or her own account.

In light of the incongruities arising from the face of the statute, the judicial decisions interpreting it cannot be fully reconciled with the enactment as a whole. For example, while Section 306(a.2)(6) explicitly affords insurers the right to compel "independent medical examination[s] in accordance with the provisions of Section 314 to determine the status of impairment," *id.* §511.2(6) -- and Section 314 plainly provides that examiners "shall be selected and paid for by the employer," *id.* §651 -- the courts have nevertheless determined that impairment rating examiners must be selected by the Bureau. *See, e.g.*, *Lewis v. WCAB (Wal-Mart Stores, Inc.)*, 856 A.2d 313, 319 (Pa. Cmwlth. 2004); *accord Diehl,* 607 Pa. at 278, 5 A.3d at 245 (indicating, via citation to Section 306(a.2)(1), that the qualifications of a physician authorized to perform an IRE include designation by the Bureau or selection by the parties). This disharmony

---

[4] The statute is remarkable in this provision for ongoing, biannual review for improvement of conditions, that, medically, must be deemed to be permanent before an impairment rating may be assigned in the first instance.

presumably derives from the fact that, by reason of impossibility or otherwise, many initial IREs simply do not occur immediately after the 104-week period as Section 306(a.2)(1) directs. Thus, the provision for reviewing "the status of impairment" has been employed to serve as a catch-all for both initial and ongoing reviews, 77 P.S. §511.2(6).

These many difficulties suggest, very strongly, that this is an area of law that is ripe for legislative review, so that the statute can be clarified and improved; fairness may be enhanced, as it must, in the midst of the many compromises and trade-offs inherent in a workers' compensation liability scheme; and the manifest intentions of the policy-making branch can be put into effect, subject to the limits of the Constitution.

Of necessity, our present decision is rendered in the context of the existing statute and the prevailing law as it has developed to this point.

**B. Credibility, Persuasiveness, Weight, and Deference**

As previously noted, the question which Claimant has presented on appeal is couched in terms of the "credibility" of Dr. Lateef's opinion. *IA Constr. Corp.*, ___ Pa. at ___, 121 A.3d at 981. However, the WCJ's opinion is framed in terms of the persuasiveness of the opinion and the weight that was accorded to it.

In the arena of administrative adjudication and otherwise, the term "credibility" has different connotations depending upon the context. The word is sometimes used, in its broadest sense, as a synonym for persuasiveness. In other instances, however, it is employed to focus on essential truth telling, encompassing the fact-finder's assessment of witness demeanor. *See Kopack v. NLRB*, 668 F.2d 946, 953 (7th Cir. 1982) (elaborating upon this distinction). Here, particularly because Dr. Lateef's testimony was presented to the WCJ in the form of a written deposition, we treat Claimant's use of the term "credibility" in the broader sense.

This consideration points up another distinction applied in some courts, since, in some jurisdictions, demeanor-based judgments at an agency fact-finding level are accorded special deference on judicial review; whereas, fact-based conclusions derived from depositions and other written materials are given lesser or no deference. *See, e.g., Davidson v. Horton Indus., Inc.*, 641 N.W.2d 138, 142 (S.D. 2002) (citation omitted). Under the prevailing law as it has developed in the Pennsylvania workers' compensation setting, however, a workers' compensation judge is generally deemed to be the "ultimate finder of fact and the *exclusive arbiter of credibility and evidentiary weight*." *Daniels v. WCAB (Tristate Transp.)*, 574 Pa. 61, 76, 828 A.2d 1043, 1052 (2003) (quoting *Thompson v. WCAB (USF&G Co.)*, 566 Pa. 420, 426-27, 781 A.2d 1146, 1150 (2001)) (emphasis added). In other words, Pennsylvania appellate tribunals accord broader deference to fact-based determinations of workers' compensation judges than is afforded in some other jurisdictions.

Indeed, some jurisdictions apply an uncontradicted medical evidence rule in workers' compensation cases, per which such evidence is generally binding on the fact-finder. *See, e.g., Nunez v. Smith's Mgmt. Corp.*, 769 P.2d 99, 101 (N.M. Ct. App. 1988). There is presently no doctrinal equivalent within the Pennsylvania workers' compensation scheme, however, and neither the Commonwealth Court nor Employer has presented a developed explanation as to why we should depart from the existing jurisprudence and supplant the "traditional administrative process" into which IRE-based modification petitions have been channeled, per the previous line of decisions. *Diehl*, 607 Pa. at 279, 5 A.3d at 245; *Gardner*, 585 Pa. at 380, 888 A.2d at 766.

Indeed, in *Diehl* this Court specifically determined that an IRE under Section 306(a.2)(6) "is entitled to no more or less weight than the results of any other examination." *Diehl*, 607 Pa. at 279, 5 A.3d at 245. Accordingly, to the degree that the

Commonwealth Court has fashioned, essentially, an uncontradicted medical evidence rule, we disapprove its decision.[5]

In response to Employer's position that such disapproval is tantamount to an evisceration of substantial-evidence review, we disagree. As this Court has explained previously, the substantial-evidence facet of the appellate review of administrative agency adjudications simply may not apply to scenarios in which a prevailing party presented no evidence. *See Leon E. Wintermyer, Inc.*, 571 Pa. at 200-01, 812 A.2d at 486. Rather, such matters often turn upon the weight attributed by the fact-finder to the evidence presented by the party bearing the burden of proof. *See id*. It is for this reason that the Commonwealth Court had fashioned a particularized "capricious disregard standard of review" to serve as a check against untenable rejections of uncontradicted evidence. *See id.* (discussing *Russell v. WCAB (Volkswagen of Am.)*, 121 Pa. Cmwlth. 436, 550 A.2d 1364 (1988)).[6]

Here, Employer bore the burden to establish grounds for modification. *See Vista Int'l Hotel v. WCAB (Daniels)*, 560 Pa. 12, 28-29 n.11, 742 A.2d 649, 658 n.11 (1999) (discussing the traditional allocation of the burden upon employers to demonstrate grounds for modification after the claimant has demonstrated a compensable work-

---

[5] In this respect, we agree with Claimant's *amicus* that the Commonwealth Court incorrectly intermixed expert witness qualifications with the weight to be accorded to such a witness's testimony by a workers' compensation judge. This distinction is also relevant to Employer's waiver argument – although Claimant may have waived any objection to Dr. Lateef's qualifications as an examiner, he did not surrender his ability to maintain that the physician's opinion was substantively unpersuasive.

[6] Ultimately, for reasons that are beyond the scope of this opinion, this Court determined that such review could extend to circumstances in which the evidence was contradicted, as a component of the appellate courts' responsibility to review whether an agency-level decision is in accordance with law. *See Leon E. Wintermyer, Inc.*, 571 Pa. at 203-04, 812 A.2d at 487-88.

related injury in the first instance). Furthermore, the WCJ was free to accept or reject Employer's evidence. In our view, the fairness considerations arising out of the fact that, under prevailing judicial interpretations of Section 306(a.2), the Bureau (and not employers) selects IRE physicians, are insufficient to justify a judicial policymaking decision to implement a specialized approach to IREs conducted under Section 306(a.2)(6). *Accord Diehl*, 607 Pa. at 279, 5 A.3d at 245.

There is one additional relevant check extending to fact-finding determinations in the workers' compensation arena, in that workers' compensation judges are required to issue developed, reasoned decisions. *See* 77 P.S. §834; *Daniels*, 574 Pa. at 67, 828 A.2d at 1046. It is in this particular respect that this Court has drawn a distinction between oral testimony and the submission of written materials such as depositions. *See id.* at 67-68, 78-79, 828 A.2d at 1046, 1053. Nevertheless, we have recognized that appellate courts must "be sensitive in not imposing an unwieldy standard of articulation upon the adjudication process," and thus, in the latter instances, they are to look simply for "the actual objective basis for the credibility determination." *Id.* at 75, 78, 828 A.2d at 1052, 1053.

## C. The Specialization Concern

At this juncture, we express our agreement with Employer's position that two of the three of the WCJ's explanations supporting her rejection of Dr. Lateef's impairment rating opinion are unconvincing as stated. As Employer observes, to the degree that the WCJ's decision harkened back to the full range of Claimant's initial work-related injuries, it was facially in tension with the nature of an IRE, which assesses the examinee's present condition. In this regard, medical improvements occurring between the time of the initial injury and the examination may resolve impairments; indeed, as

noted, the doctrinal underpinnings of the Medical Guides are rooted to the occurrence of maximum improvement and "permanency," *see* AMA Guides §§2.5e, 2.5f.

We also agree that the WCJ's concern with "lumping" medical conditions is too underdeveloped to be accorded controlling significance. The AMA Guides themselves establish broad categories of impairments tied to functional sub-units of a whole person, such as the nervous system. *See* AMA Guides, Ch. 13. Accordingly, in furtherance of a reasoned decision, the WCJ should have explained how Dr. Lateef's categorizations were inconsistent with those he was required to implement, per such guidelines.

Our decision thus turns upon the degree to which the WCJ's concern with Dr. Lateef's out-of-specialty opinion relative to traumatic brain injury serves as a sufficient basis for a reasoned rejection of his testimony. In this regard, although Employer treats the WCJ's decision as entirely superficial, Employer itself presents a shallow argument in its repeated assertion that Dr. Lateef accorded the maximum impairment rating available to Claimant's brain injury. *See* Brief for Employer at 7-8, 16, 19. In point of fact, the physician assigned the maximum rating available within the class of impairment that he selected ("Moderate abnormalities"), but higher percentages attend more severe classifications. *See* AMA Guides, Table 13-8. For this reason, most assuredly, 20 percent impairment is not necessarily "the maximum rating permitted under the AMA guidelines." Brief for Employer at 7-8.

Superficiality was also the basis for the WCJ's concern with Dr. Lateef's examination relative to Claimant's brain injury. The examination appears to have centered on Claimant's ability to say his own name, describe his present location, supply the correct date, spell a word backwards, and identify the President of the United States. *See* Deposition of M. Bud Lateef dated Feb. 10, 2011, in *Rhodes*, No. 390-391992, at 10. According to the AMA Guides, however, an examination for neurological

impairment "should be based on a detailed mental status examination, often in concert with neuropsychological assessment and testing." AMA Guides §13.3d. Like the WCJ, we find little in Dr. Lateef's deposition or report to suggest that such a detailed mental status examination was undertaken. *Cf. Rhodes*, No. A11-1631, *slip op.*, at 7 (Frioni, Chairman, dissenting) (recognizing that "Dr. Lateef's report could have been greatly improved upon").

It is also significant that, like Employer's presentation to this Court, Dr. Lateef's testimony does not elaborate on the differences in impairment attaching to the different classes of neurological impairment (which are normal and mild, moderate, severe, and most profound abnormalities). An apparent question, not answered by the physician, is what sort of additional impact on activities of daily living would be required to move from the "moderate abnormalities" classification attributed to Claimant, justifying the up to 20 percent impairment rating, to the "severe" or "most profound" abnormalities classifications, warranting up to 35 and 50 percent impairment ratings, respectively. *See* AMA Guides, Table 13-8.

In the above landscape, we decline to deem the WCJ's concerns with Dr. Lateef's opinion "unreasoned." While we recognize that employers lack control over the IRE process within the prevailing administrative scheme, claimants have as little or less control. To the degree that there is an element of unfairness associated with the Bureau's handling of individual IRE physician assignments, this would appear to be a systemic concern most appropriate to administrative and/or legislative consideration.[7]

---

[7] We have often remarked upon the superior resources available to the General Assembly in policymaking ventures. *See, e.g., Official Comm. of Unsecured Creditors of Allegheny Health Educ. & Research Found. v. PriceWaterhouseCoopers, LLP,* 605 Pa. 269, 301 & n. 27, 989 A.2d 313, 333 & n. 27 (2010) (referencing the broader tools available to the legislative branch, such as policy hearings and comprehensive investigations); *Naylor v. Twp. of Hellam,* 565 Pa. 397, 408, 773 A.2d 770, 777 (2001) (continued…)

In the meantime, Employer will simply need to do its best to communicate its case-specific concerns to the Bureau, at least to the extent that it wishes to pursue the series of ongoing impairment rating examinations of Claimant authorized by Section 306(a.2)(6).

Notably, our decision that a workers' compensation judge may validly accord lesser weight to an underdeveloped, out-of-specialty opinion regarding the degree of impairment associated with traumatic brain injury is consistent with the approach of other jurisdictions that do not apply an uncontradicted medical evidence rule. *See, e.g.*, *Adams v. Massanari*, 55 Fed. Appx. 279, 284 (6th Cir. 2003) (explaining that, as a general rule at least, an administrative law judge "may discredit the opinion of a physician that is outside her area of expertise" (citing *Turley v. Sullivan,* 939 F.2d 524, 527 (8th Cir. 1991))).[8]

In summary, this Court has previously determined that physicians' impairment rating opinions pertaining to IREs conducted under Section 306(a.2)(6) are subject to vetting through the "traditional administrative process." *Diehl*, 607 Pa. at 279, 5 A.3d at 245; *Gardner*, 585 Pa. at 380, 888 A.2d at 766. Accordingly, the Commonwealth Court

---

(…continued)
(recognizing the General Assembly's superior ability to examine social policy issues and determine legal standards so as to balance competing concerns); *Program Admin. Servs., Inc. v. Dauphin Cnty. Gen. Auth.,* 593 Pa. 184, 192, 928 A.2d 1013, 1017–18 (2007) ("[I]t is the Legislature's chief function to set public policy and the courts' role to enforce that policy, subject to constitutional limitations.").

[8] We do caution that workers' compensation judges should be sensitive to the character of the impairment rating process, which focuses on the entire body of the examinee. Thus, by its nature, the evaluation in most cases will require a review of cross-specialty considerations. Our decision here focuses on the discrete nature of brain injuries in that they often implicate specialized assessment measures, *see* AMA Guides §13.3d, the undisputed fact that Claimant suffers from at least a moderate brain injury, and the import of such injury to the overall impairment rating.

erred in its conclusions that a workers' compensation judge lacks the authority to reject uncontradicted testimony by an IRE physician and that, in the present case, the WCJ was required to identify substantial contrary evidence in the record to support such rejection.

The order of the Commonwealth Court is reversed, and the matter is remanded for reinstatement of the workers' compensation judge's adjudication, as affirmed by the WCAB.

Justices Baer, Todd, Donohue, Dougherty and Wecht join the opinion.